CASE NOS. 19-1566/19-1714

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT
100 E. FIFTH STREET, ROOM 540
POTTER STEWARD U.S. COURTHOUSE
CINCINNATI, OHIO  45202-3988

**Jane doe,**

Plaintiff/Appellant,

v.

**Ben Carson, Executive Director, HUD; United States of America; Gary Heidel, Acting Executive Director, Michigan State Housing Development Authority**

Defendants-Appellees.

# REPLY BRIEF OF JANE DOE
In the Matters of Anonymity
& Request for Remand with a New Judge

APPEAL FROM W.D. MICH. CASE NO. 1:18-CV-1231

Jane Doe, Pro Se
P.O. Box 230721
Grand Rapids, MI 49523
court.docs.only.0@gmail.com
239.537.5966

1

# TABLE OF CONTENTS

TABLE OF AUTHORITIES FOR REPLY BRIEF                 3

TABLE OF AUTHORITIES FOR
MOTION/AFFIDAVIT NEW JUDGE                           6

INTRODUCTION                                         8

ISSUES PRESENTED                                     15

STATEMENT OF THE CASE                                16

ARGUMENT                                             22

REQUEST FOR NEW JUDGE                                31

CONCLUSION                                           43

CERTIFICATE OF SERVICE                               45

DOCUMENTS USED FOR REFERENCES                        46

# TABLE OF AUTHORITIES FOR REPLY BRIEF[1]

*Bejing Fito Med. Co. v. Wright Med. Tech., Inc.,* Case No. 17-6530 (6th Cir. Feb. 7, 2019)

*Brown & Williamson Tobacco Corp. v. FTC*, 710 F.2d 1165 (6th Cir. 1983)

**\*\*\****Citizens for a Strong Ohio v. Marsh, 1*23 F. App'x 630 (6th Cir. 2005)

*Cobell v. Kempthorne*, 455 F.3d 317 (D.C. Cir. 2006)

*Dick Broad. Co. v. Oak Ridge FM, Inc.*, 395 S.W.3d 653 (Tenn. 2013)

**\*\*\****Doe v. Carson*, 2019 WL 1978428 (W.D. Mich May 3, 2019)

*Doe v. Deschamps*, 64 F.R.D. 652 (D. Mont. 1974)

*Doe v. Frank*, 951 F.2d 320 (11th Cir. 1992)

*Doe v. Harris*, 495 F.Supp. 1161 (S.D.N.Y. June 30, 1980)

*Doe v. Porter*, 370 F.3d 558 (6th Cir. 2004)

*Doe v. Provident Life,* 176 F.R.D. 464 (E.D. Pa. 1997)

**\*\*\****Doe v. Sessions*, 2018 WL 4637014 (D.D.C. Sept. 27, 2018)

*Doe v. Stegall*, 653 F.2d 180 (5th Cir. 1981)

---

1    *  denotes cases attached to Motion/Affidavit for New Judge
     **denotes cases attached to Doe Brief
     Doe is unable to otherwise attach any cases to this Reply Brief via email
     Table of Authorities for Motion/Affidavit for New Judge immediately follows this one

*Doe v. University of Akron*, 2016 WL 4520512 (N.D. Ohio Feb. 3, 2016)

*Fineout v. Kostanko*, No. 17-1910 (6th Cir. 2019)

***G.E.G. v. Shinseki,* 2012 WL 381589 (WD Mich. Feb. 6, 2012)

*Godboldo v. Cnty of Wayne*, No. 15-2438 (6th Cir. Apr. 14, 2017)

*Home-owners Ins. Co. v. Allied Prop. & Cas. Ins. Co.* Case No. 1268 (6th Cir. Dec. 16, 2016)

*Liteky v. United States*, 510 U.S. 540, 114 S.Ct. 1147 (1994)

**Mich. Prot. & Advocacy Serv. v. Caruso*, Case No. 5:05-cv-128, 2006 WL 958496 (W.D. Mich. April 10, 2006)

*Miller v. Riverwood Recreation Ctr., Inc.*, 546 N.W.2d 684 (Mich. Ct. App. 1996)

*Odom v. Wayne County*, 760 N.W. 2d 217 (Mich. 2008)

*People v. Downes,* 228 N.W.2d 212 (Mich. 1975)

*Rorrer v. City of Stow*, 743 F.3d 1025 (6th Cir. 2014)

*Southern Meth. Univ. Ass'n of Women Law Students v. Wynne & Jaffe,* 599 F.2d 707 (5th Cir. 1979)

*U.S. ex rel. Williams v. Renal Care Grp., Inc.*, 696 F.3d 518 (6th Cir. 2012)

*United States v. Grinnell Corp.*, 384 U.S. 563 (1965)

*United States v. Microsoft,* 56 F.3d 1448 (D.C. Cir. 1995)

5 U.S.C. §552   Freedom of Information Act

5 U.S.C. §552(b)

5 U.S.C. §702

28 U.S.C. §455(a)

28 U.S.C. §455(b)

28 U.S.C. §2106 (1988)

29 U.S.C. §701 et seq

29 U.S.C. §791 et seq., Sec 504 of Rehab Act of 1973

42 U.S.C. §12101 et seq., Americans with Disabilities Act of 1990

42 U.S.C. §12201

42 U.S.C. §12201(f)

42 U.S.C. §12203

42 U.S.C. §12132

Fed.R.Civ.P. Rule 15

W.D. Mich. Local Civ. R. 10.7

*Black's Law Dictionary* (6th ed.)

## TABLE OF AUTHORITIES
## DOE MOTION & AFFIDAVIT FOR NEW JUDGE

*Citizens for a Strong Ohio v. Marsh*, 123 Fed.App'x 630 (6th Cir. 2005)

*Doe v. Carson*, 2019 WL 1981886 (W.D. Mich. Jan. 4, 2019)

*Doe v. Carson*, 2019 WL 1978428 (W.D. Mich. May 3, 2019)

*Doe v. Merten*, 219 F.R.D. 387 (E.D. Va. 2004)

*Doe v. North Carolina Cent. Univ.*, No. 1:98-cv-1095, 1999 WL 1939248 (M.D.M.C. Apr. 15, 1999)

*Doe v. Porter*, 370 F.3d 558 (6th Cir. 2004)

*Doe v. Sessions*, 2018 WL 4637014 (D.D.C. Sept. 27, 2018)

*Doe v. Stegall*, 653 F.2d 180 (5th Cir. 1981)

*Doe v. University of Akron*, 2016 WL 4520512 (N.D. Ohio Feb. 3, 2016)

*Doe v. University of Pittsburgh,* 2017 WL 11379837 (W.D. Mich. March 23, 2017)

*Doe v. University of Pittsburgh*, 2017 WL 6503434 (W.D. Mich. June 13, 2017)

*Doe v. University of Pittsburgh*, 2017 WL 6508183 (W.D. Mich. Sept. 6, 2017)

*Doe v. University of Pittsburgh*, 2018 WL 3029085 (W.D. Mich. Jan. 12, 2018)

*Doe v. University of Pittsburgh*, 2018 WL 1312219 (W.D. Mich. Mar. 4, 2018)

*Ericksen v. United States*, 2017 WL 264499 (E.D. Mich. Jan. 20, 2017)

*G.E.G. v. Shinseki*, 2012 WL 381589 (W.D. Mich. Feb. 6, 2012)

*K.G. v. Board of Education of Woodford Cty.*, 2019 WL 4467638 (E.D. Kentucky Sept. 18, 2019)

*Kitchen v. Corizon Health Inc.*, 2018 WL 4674570 (W.D. Mich. Sept. 28, 2018)

*Maty v. Grasselli Co.*, 303 U.S. 197 (1937)

*Neitzke v. Williams*, 490 U.S. 319 (1989), 109 S. Ct. 1827

*Plaintiff B. v. Francis*, 631 F.3d 1310 (11th Cir. 2011)

*Southern Methodist Univ. Ass'n of Women Law Students v. Wynne & Jaffe*, 599 F.2d 707 (5th Cir. 1979)

*United States v. Microsoft*, 56 F.3d 1448 (D.C. Cir. 1995)

28 U.S.C. §144

28 U.S.C. §455(a) (1998)

28 U.S.C. §2106 (1988)

Federal Rule of Civil Procedure 15(a)(2)Inserro, Allison, *Psychologist Barkley Says Life Expectancy Slashed in Worst Cases for Those With ADHD*, American Journal of Managed Care, January 15, 2018, Conference, American Professional Society of ADHD and Related Disorders, January 14, 2018

INTRODUCTION

Doe filed the request for anonymity on December 7, 2018 R. 12, pageID# 76, HUD counsel filed an appearance December 10, 2018 and did not file anything in relation to anonymity until this response brief HUD Br. Doc 26 dated March 23, 2020. On December 21, 2018, MSHDA attorney for the State filed a statement of no objection to Doe proceeding anonymously R. 18, PageID# 101, and now they also object at State Br. Doc 25.

Both defendants are referring to Doe's disabling condition as "alleged." HUD Br. 14, "The court found that Doe's alleged mental condition...", HUD Br. 22, "Doe's alleged mental health condition..." & "Doe's alleged disability is neither central to her claim..." HUD Br. 24, "Doe's alleged mental health condition..."  later on same page, "Doe's mental health is not central to her claims. "Doe did not present to the district court evidence that her alleged mental health condition is the kind of unique and exceptional circumstance that qualifies as information of the

utmost intimacy." In the State Br. 13, "The only tangible evidence of her alleged disability and its scope that Doe submits to support her claim that she is entitled to a housing voucher for a two-bedroom apartment is Exhibit 1 to her Motion to File 2nd Amendment to Complaint, which is a letter denying an insurance application." [2]  [R. 11-1, page ID# 75.]

Doe is listed on all the housing program documents as disabled and has been given the standard income deduction for being disabled for all her years in the program.  Any sudden surprise by defendants that Doe is disabled is inexplicable.


In the district court filing requesting an attorney and to be able to further amend the complaint, Doe attached a letter from USAA, where she was declined for a life insurance policy "we regret to inform you we are unable to provide you with coverage because of your overall medical history to include bipolar disorder, obsessive-compulsive

2   The disability accommodation doesn't relate to two bedrooms, it relates to living near her son because her children are the only people who understand and assist Doe. It was an accommodation that should have been provided when Doe arrived in Michigan but was denied.

disorder, anxiety, depression and attention deficit disorder as noted in the medical records received from VA Wyoming Healthcare Center." R. 11-1, pageID# 75. Doe thought insurance companies are likely to do professional and thorough reviews having much experience in the matter, and USAA is a very reputable company.

However, the State has overlooked another item of "tangible evidence" describing Doe's disability, on November 23, 2013, Doe faxed to the housing agency a copy of a psychiatry note prepared by her physician that stated Doe was diagnosed with a mood disorder, attention deficit disorder, anxiety disorder, borderline traits and had a history of abuse, financial problems and homelessness. This note states that Doe has reported being in danger of losing her housing voucher. "She feels she needs an advocate to get through the system and have her needs met. She continues to struggle with organization both of thought and in terms of daily activities and function. Her known mood disorder, anxiety symptoms, attention deficit disorder, clearly impair her ability to communicate effectively with the bureaucracy. I would encourage

that those in a position to do so be patient and assist her (accommodate) her in order that her needs be met." The anti-depressant, mood disorder medicine and ADD medicine prescribed for Doe are listed. The note is dated November 4, 2013. Doe sent a copy of this to the attorney for the State January 5, 2019. HUD in DC got a copy of this in 2016, as did DOJ.  No advocate was ever provided. This document is referenced in the complaint at R.1, PageID# 8, and is also noted in Doe Br. 17.

The very first page of Doe's complaint following the caption at R.1, PageID# 2 is a detailed list of problems Doe has functioning in the world, in daily life. There are further explanations throughout her filings. She also states the Social Security Administration awarded her disability benefits about 90 days from requesting her medical records. (Requested in March 2010, awarded in May 2010). The social security determination is also noted at Doe Br. 14. It's Doe's understanding that this is a fairly prompt award by this agency.

The question in this litigation is not, "Is Doe Disabled?" the question is whether or not HUD and the State have been following the law in regard to the administration of the housing program. Doe contends they have not been.

Under the ADA, there are three main components:

1. Are you disabled? Yes.

2. Are you otherwise qualified to participate in the program, called a 'qualified individual with disabilities'? Doe is already in the program, so yes.

3.  Has discrimination taken place?   In Doe's view, yes.

Discrimination is defined at 42 U.S.C. §12132 as having been denied the benefits of programs, activities or services or having been excluded

from participation in those by a public entity or has been subjected to discrimination by any such entity.

Reasonable modifications in policies, practices, or procedures shall be required, unless an entity can demonstrate that making such modifications would fundamentally alter the nature of the goods, services, facilities, privileges, advantages, or accommodations involved. 42 U.S.C. §12201(f).

Doe requested an attorney for her district court case to help in organization of filings and of how to structure specific documents and meet time lines, and help Doe clarify her thoughts and analysis. Doe's mind went completely blank when trying to remember what to put on the cover sheet of her brief. Part of that was stress. Doe got a CALI Award in Contract Law, but had never written a complaint and didn't have a clue how to do it. It was like a complete fog, a total mystery and she essentially slogged through it.

HUD Br. 22 indicates that Doe has definitively stated she would not pursue the suit if forced to do so in her real name.  Doe does not recall saying that, cannot find it, and in her mind has not decided whether or not she would proceed with the case. She shouldn't be forced with that choice. The court in *Doe v. Provident Life,* 176 F.R.D. 464 (E.D. Pa. 1997) a case where plaintiff is suing for disability benefits, notes that if persons with psychiatric problems are not able to redact their names, "unscrupulous insurance companies will be encouraged to deny valid claims with the expectation that these individuals will not pursue their rights in court." *Provident* at 468. Doe Br. at 28.

*Mich. Protection and Advocacy Service, Inc. v. Caruso*, Case No. 5:05-cv-128 (W.D. Mich. Apr. 10, 2006) is a case in which an agency with statutory authority to protect the rights of mentally ill individuals is representing correctional inmates at a juvenile facility. The facility wants to know the names of the individuals being represented and plaintiff has submitted a protection order such that the knowledge of

the identities be restricted to the attorneys. The court, "Defendant's resistance to a proper protective order does little to distinguish itself from a cynical attempt to force child prisoners to abandon a lawsuit by threatened disclosure of their identities and medical conditions to unrelated prison staff and other inmates (who might utilize the information to exercise untoward influence over the children and/or victimize them)." *Mich. Prot.* at \*2.  Some fact variation, but relevant as another constitutional rights case for mental illness.  People who don't want these suits to go forward, whether insurance companies or the government, use the publicity threat as a sword.

## ISSUES PRESENTED

HUD Br. 9 states that Doe filed her request for anonymity "several months" after filing the complaint. Doe filed the complaint Nov. 2, 2018, R.1 and the Request for Anonymity R.12 on December 7, 2018. HUD/US made appearance in the case on December 10, 2018 and failed to notify Doe who found out from the attorney for the State.

## STATEMENT OF THE CASE

Doe did not file suit against "various" state and federal parties as indicated at HUD Br. 10. Doe filed against HUD, the US, and the Michigan State Housing Development Authority. There is one state agency and one federal agency.

HUD Br. 10 states "The complaint described the plaintiff as Jane Doe and only included a post office box; it did not state her address, e-mail address, or telephone number." Doe only gets mail at the post office and gets none at her physical residence so that address has no relevance. Other plaintiffs may have documents sent to their attorney's office rather than their home so you don't see their home address listed on filings. Doe prefers not to use email for these matters (it feels like a home invasion), but an email address and phone number is in the Complaint if you read to the last page and look below the signature R. 1, PageID# 33.

Related to the contact information, the day prior to Doe submitting her brief in this appeal, February 19, 2020, Doe went to the clerk's office to put the page ID#s on her copies of documents for citations in the brief. Doe found at that time a filing made by HUD/US, a motion for an "Extension of Time in which to Respond to Plaintiff's Complaint in Light of Lapse of Appropriations" dated January 14, 2019, R. 23, pageID# 114-115 that Doe had not seen before. It stated "government defendants were limited in their ability to investigate and defend the case by Plaintiff's refusal to name him or herself."  As Doe noted in the request to amend and have an attorney appointed R.11, filed December 7, 2018, Doe was told by an assistant US Attorney that the complaint had not been served.  There was no reason to give Doe's name at that time since there was no attorney assigned to the case. There is no indication what missing pageID# 116 is.

With that filing on January 14, 2019 was a Certificate of Compliance stating on Jan. 14, 2019 Jeanne Long attempted to confer with Doe. "A person who identified herself as Doe previously called me in

connection with this case; I attempted to contact Doe at that number, but Doe did not respond." R. 24 Page ID# 117. Doe did not get a message from Jeanne Long that day or she would have returned the call. And the cloak and dagger language about Doe's phone number ignores the fact that not only was Doe's phone number provided on the initial complaint filed Nov. 2, 2018, R. 1 Page ID#33, the name, address, phone # and email address was also on the Amendment to the Complaint next filed by Doe Nov. 26, 2018 (R. 7, Page ID# 61), then the filing after that where Doe requested to file a second amendment and be appointed an attorney on Dec. 7, 2018 there was Doe's address, email and phone number R.11, PageID# 67, and the request for anonymity also filed on Dec. 7, 2018 also included the email and phone number. (misfiled in the clerks office as R. 11, PageID# 73, but HUD got a paper copy where this page immediately followed R. 12 Page ID# 86).

Doe and the representative for the State had exchanged several deadline delay-related documents, so when Doe received an Order from

the Magistrate dated Jan. 15, 2019 R. 24, pageID# 118 saying "This matter having come before the Court on the government defendant's motion for extension of time... etc. Doe thought it was related to filings between the Doe and the State.  All of the defendants are "government". Since the HUD motion submitted to the court did not indicate Doe had been copied, Doe doesn't understand why the magistrate would not have corrected this.

HUD Br. 10 indicates Doe's complaint sought review of an agency action under the Administrative Procedure Act, 5 U.S.C. §702. On the cover sheet to the Complaint, at VI. CAUSE OF ACTION, Doe cites the statute under which she is filing as 42 U.S.C. 12101 et seq. which is the Americans with Disabilities statute, and the description of the cause as Discrimination Sec 504 of Rehab Act of 1973. R. 1-1, PageID# 34. At the beginning of Doe's complaint in a summary Doe states she is bringing suit due to on-going discriminatory practices by defendants in violation of Section 504 of the Rehabilitation Act of 1973 (Codified at 29 U.S.C. §791 et seq.); the Americans with Disabilities

Act of 1990, as Amended (Codified at 42 U.S.C. §12101 et seq.)  It is apparent throughout that this is a discrimination suit. To be sure defendants were violating rules and procedures in addition to statutes and the Constitution, but calling it a suit under the Administrative Procedures Act doesn't give an accurate picture.  At Doe Br. 20, Doe indicates in the first sentence in the Summary of the Argument, "Doe filed suit in the district court to obtain relief from discrimination under Title II of the Americans with Disabilities Act of 1990, 42 U.S.C. §12101 et seq.; Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. §701 et seq.; and constitutional violations under due process and equal protection."

HUD Br. 10 indicates Doe alleged defendants violated the law by "requiring her to submit paperwork to maintain her voucher eligibility." Saying Doe is in a government program and thinks the government is breaking the law by requesting her to file paperwork gives a false impression.  There was a bunch of paperwork before Doe left Florida for the transfer. This was sent to Michigan. Doe felt they

should have warned her in advance that additional paperwork was going to be required on arrival before she put all her boxes containing all her possessions, including documents in a 10x10 storage locker piled floor to ceiling in no particular order with no exterior identification of which boxes certain documents might be in.

HUD states Doe filed an *amended complaint* and states the name of that filing as Amendment to the Complaint R. 7, PageID# 47. Just as labeled, that's what it was, an amendment, not an amended complaint. Doe couldn't afford all the copies an amended complaint would have required: for the clerk, the judge, the magistrate, both attorneys, and herself.

State Br. 10 indicates that Doe is seeking money damages. That is not correct. Doe requested only equitable relief, to include corrections of errors in deriving adjusted income which rendered rent determinations incorrect.

# ARGUMENT

HUD Br. 16 states at least the Court needs to know Doe's identity. Of course the court would know Doe's identity. Doe just doesn't want it in the public record. The attorney for the State knows Doe's identity and Doe stated in her brief her identity would be known to the parties. There would be absolutely no way to have a case decided at all without Doe's identity being known.

HUD Br. 18 states "A plaintiff who wishes to commence a case but proceed without her identity being made public should file the under seal using her real name and move to proceed under a pseudonym. See, e.g., W.D. Mich. Local Civ. R. 10.7; *Citizens for a Strong Ohio v. Marsh*, 123 F. App'x 630, 636 (6th Cir. 2005)." The local rule cited here appears to give instructions regarding when and how to seal information in a case, but does not support the statement specific to instructing filing your name under seal if you wish to be anonymous,

and Doe doesn't see seals discussed at all in *Citizens for a Strong Ohio v. Marsh*.

HUD Br. 23 indicates that a public defendant doesn't weigh in Doe's favor regarding anonymity. HUD Br. 23 cites to *Doe v. Frank*, 951 F.2d 320 (11th Cir. 1992) and quotes, "This factor 'must be viewed in the context that it was first articulated'." *Frank* at 323. HUD continues on comparing whether one is suing the government or a private party. The point in discussing if there is reason that makes pursing a case against the government anonymously in Doe's case a strong one is a different discussion than the pros and cons of having anonymity when suing a private party. These are not in pari materia. Doe has gone into the entire history of the development of the law upon which anonymity evaluations in this Circuit are based. Doe Br. 56, item 4 through to page 62. [Please note an error at the top of Doe Br. at 60 on line two it should say "Religion is not in the cases that had been collected in *Deshamps*," referring to *Doe v. Deschamps*, 64 F.R.D. 652 (D. Mont. 1974)]

23

HUD Br. 24 states mental illness is not exceptionally intimate. The court in *Doe v. Stegall*, 653 F.2d 180 (5th Cir. 1981) didn't consider privacy in religion to be 'intimate' but considered private sufficient to grant anonymity--why in its review of the *SMU* factors [taken from *Southern Meth. Univ. Ass'n of Women Law Students v. Wynne & Jaffe*, 599 F.2d 707 (5th Cir. 1979)], that court saying only government activity applied of the three *SMU* factors. *Doe v. Stegall*, 653 F.2d 180, 185 (5th Cir. 1981). *Doe v. Porter*, 370 F.3d 558 (6th Cir. 2004) uses the reasoning in *Stegall* in its determination that religion is private. The word 'intimate' is still used, likely because so many courts have used the term in citing to *SMU*, but it's with the understanding that it includes matters which are probably more accurately described as private. To put into context, in 1979 a judge (in *SMU*) synthesized roughly a dozen cases that another judge in 1974 (in *Deschamps*) had been able to identify that had granted anonymity. That isn't a broad sample, which is why it didn't cover every possible valid reason to grant anonymity. And why the court in *Stegall* stated, "The opinion [in

*SMU*] never purports to establish the three common factors it isolates as prerequisites to bringing an anonymous suit." *Stegall* at 185.

HUD Br. 24 states "to the extent Doe might disclose personal information, sealing the case and prohibiting public disclosure of her identity is not the least restrictive means of protecting the information." Doe doesn't recall asking in her appellate brief for anything to be sealed, and name redaction is in fact the least restrictive means to protect the information. "Party anonymity does not obstruct the public's view of the issues joined or the court's performance in resolving them." *Stegall* at 185.

State Br. 25 says "Doe has made no mention of any concerns related to the fact that her litigation involves governmental defendants. Doe's stated concerns all revolve around what she believes to be the social stigma surrounding mental illness and the potential for future discrimination."  Doe's discussion related to the government as the defendant is brought out at 39, the section on statutory law. Doe

discusses the statutory goal of the Freedom of Information Act, 5

U.S.C. §552 to bring activities of the federal agencies to light, which is

what Doe is trying to do in her suit. Doe is not doing it through

FOIA, but the point is that governmental activity should not be hidden

such that agencies think they needn't abide the law. And the

exceptions to the FOIA, 5 U.S.C. §552(b) are to protect the privacy of

individuals. Though not required to ("The Freedom of Information Act

specifically exempts the federal courts from its disclosure

requirements." *Brown & Williamson Tobacco Corp. v. FTC*, 710 F.2d

1165, 1177 (6th Cir. 1983)), courts generally maintain the privacy of

individuals in most of these protected areas.


State Br. 25-26 continues "Because Doe has not asserted that she is

concerned with the government being aware of her identity, this factor

does not weigh in favor of her request for anonymity, and at a

minimum it stands to reason that this factor should be given only

minimal consideration in weighing Doe's privacy interest against the

public's right to openness in litigation." Doe M/Aff. at 5-12 discusses

the confusion by various courts on the government factor identified in

*SMU*, "cases to proceed anonymously were challenging the

constitutional, statutory or regulatory validity of government activity."

*SMU* at 713. The State here seems to misunderstand and is thinking

this means more than the fact that a suit is being brought against a

governmental entity.

State Br. 26 indicates that "The Sixth Circuit has specifically recognized

matters relating to 'birth control, abortion, homosexuality or the

welfare rights of illegitimate children or abandoned families' as matters

of the 'utmost intimacy.' See *Doe v. Porter*, 370 F.3d at 560" It

happens that Doe's copy of this case is actually a photocopy of the 370

Federal Reporter, 3d Series. Doe doesn't see any reference to those

items in the copy she has. The second cite there, to *SMU* is where the

judge in *SMU* identifies the subject matter of the cases from *Doe v.*

*Deschamps* that he reviewed to come up with the common elements to

create a tool for use by future courts. Thereafter, *Stegall* and *Porter*

used the parameters the judge in *SMU* had identified and did not use

the list of the subject matter from the *Deschamps* cases to evaluate

their cases. Doe Br. 56-62 #4 provides an extensive discussion of the

history from *Deschamps*, to *SMU*, to *Stegall*, to *Porter*.  The point of

*SMU* identifying common generic factors was so that no one would

have to go back to 1974 to identify cases one court in Montana at that

time could find in a search of anonymity cases and declare those are

THE issues which are intimate. *Stegall* established that a subject being

private should also be protected, religion in that case. *Porter* followed

on the same reasoning as *Stegall*. As Doe noted in her brief, if the

point of listing anything is to put forth examples of a private matter, it

would be expected to include the subject matter in *Porter*, considered

the precedent case in the Sixth Circuit that specifically cited Stegall in

its reasoning. And the subject matter for both of those was the privacy

of religion.


On State Br. 27, "As the District Court for the Western District of

Michigan opined in *G.E.G. v. Shinseki, No. 10-1124 (WD Mich. Feb. 6,*

*2012) (2012 WL 381589)* "[d]isability discrimination cases involving

disabilities such as those alleged by Plaintiff are routinely filed by named plaintiffs." Doe M/Aff. 12-15 discusses how there are no citations provided for that statement in *G.E.G.*, that the court in *Doe v. University of Akron*, 2016 WL 4520512 (N.D. Ohio Feb. 3, 2016) cited that statement in *G.E.G.* to indicate disabilities such as the litigant in his court are filed all the time. He did not cite any such cases and overlooked that the court in *G.E.G.* had not. In Doe's case the judge says her disabilities "constitute the type of concerns harbored by other similarly situated litigants who file lawsuits under their real names." *Doe v. Carson*, 2019 WL 1978428 *1 (W.D. Mich May 3, 2019) R. 27, pageID# 123 and again no cites of such cases are provided. Now the State cites these amorphous cases, also without identifying what they might be.

State Br. 28 talks about Doe putting forth conjecture as far as what qualifies as intimate. Doe believes she has well-supported her case in her filings.  State Br. 31 indicates that "Doe has only preserved the 'utmost intimacy' issue for appeal, she has waived her right to have

this Court consider or weigh this factor with other factors." Doe has no idea what that means.

State Br. 32-34 discusses Doe's request for an attorney in the district court case, a matter which was not included in this appeal.

State Br. 36 indicates "Doe seeks the option to amend her complaint by supplement, without limitation." As far as Doe understands, amending is dealing with information from before the time of the original pleading. Fed.R.Civ.P. Rule 15(a)-(c), and supplemental pleadings are for events which occurred following the time the original complaint was filed. Fed.R.Civ.P. Rule 15(d). So Doe is not clear on what is meant in this statement of those together.

## ON REQUESTING A NEW JUDGE

The state asserts that Doe did not file a request for a new judge with an affidavit to the district court. State Resp. M/Aff. at 2. The judge in the district court had already dismissed the case, May 30, 2019 R. 32 PageID# 169 prior to Doe receiving a copy of the accusation of having filed the appeal about appealing in forma pauperis in bad faith, which the judge filed in the district court May 29, 2019. R. 31, PageID# 167.

A rule that a district court's ruling on a motion for recusal is based on an abuse of discretion standard as noted by the State, has no relevance State Resp. M/Aff. at 2. "Both the recusal statute and our general supervisory power to 'require such further proceedings to be had as may be just under the circumstances.' 28 U.S.C. §2106 (1988) allow us to reassign this case to a different judge on remand." *United States v. Microsoft,* 56 F.3d 1448, 1463 (D.C. Cir. 1995) (quoting *Liteky v. United States*, 510 U.S. 540, 114  S. Ct. 1147, 1156-57, 127 L.Ed.2d 474 (1994)).

Contrary to the position put forth in the state's response in State Resp. M/Aff. at 4, that bias "must" stem from an extrajudicial source based on *United States v. Grinnell Corp.*, 384 U.S. 563, 583 (1965), the more accurate expression of the Supreme Court's position is, "It is wrong...to suggest...that 'extrajudicial source' is the *only* basis for establishing disqualifying bias or prejudice." (emphasis in original) *Liteky v. United States,* 510 U.S. 540, 551, 114 S .Ct. 1147, 1156-57, 127 L.Ed.2d 474 (1994). "[N]either the presence of an extrajudicial source necessarily establishes bias, nor the absence of an extrajudicial source necessarily precludes bias" *Id.* at 554. "It is the only *common* basis, but not the *exclusive* one." (emphasis in original). *Liteky* at 551.

The analysis under 28 U.S.C. §2106 is conducted as under 28 U.S.C. §455(a). *United States v. Microsoft,* 56 F.3d 1448, 1465 n.2 (D.C. Cir. 1995).  To determine if a remand is necessary under these standards the court considers:

1. Whether the original judge would reasonably be expected to have substantial difficulty in putting out of his or her mind previously expressed views or findings;

2. Whether reassignment is advisable to preserve the appearance of justice; and,

3. Whether reassignment would entail waste and duplication out of proportion to any gain in preserving the appearance of fairness.

*Rorrer v. City of Stow*, 743 F.3d 1025, 1049 (6th Cir. 2014) citing *U.S. ex rel. Williams v. Renal Care Grp., Inc.*, 696 F.3d 518, 532-33 (6th Cir. 2012).

Judicial remarks in trial do not ordinarily support a bias or partiality charge unless they reveal such a high degree of favoritism or antagonism as to make fair judgment impossible. *Rorrer* at 1050 citing *Liteky* at 555. In *Rorrer*, the district court made a preemptive

statement that it would strike witness statements submitted by Rorrer to contest summary judgment; it reprimanded Rorrer that he was contravening the court order of rule of 5 witnesses at trial for having submitted the witness statements, which was not correct; and the district court had imposed more discovery limitations on Rorrer than the defendant, and further accused Rorrer of trying to 'sandbag' defendants. *Rorrer* at 1049-50.

The district court's discovery limitations and statements indicate that allowing the same dist ct judge to preside over this case on remand would "compromise the appearance of justice." *Rorrer* citing *U.S. ex rel. Williams v. Renal Care Grp., Inc.*, 696 F.3d 518, 532-33 (6th Cir. 2012). This Court did not think reassignment would entail waste and duplication out of proportion to any gain in preserving the appearance of fairness. *Rorrer* at 1050. "All three factors militate in favor of reassigning this case." *Rorrer* at 1051, granting reassignment on remand.

In another case, *Cobell v. Kempthorne*, 455 F.3d 317 (D.C. Cir. 2006) a case regarding Dept of Interior's accounting of funds that had been in trust for Indians, a complicated case wherein the Dept. of Interior was basically not able to account for funds, but apparently was trying to do so.  The circuit judge was fine when the dist ct made allegations of racism in past administrations, noting, "Interior's deplorable record deserves condemnation in the strongest terms", but when the dist ct suggested people in the current dept of Int. were racists, that was going too far. *Cobell* at 333. "The opinion [by the dist.ct.] describes Interior as an agency whose 'spite' has led it to turn its 'wrath' on trust beneficiaries and engage in 'willful misconduct', 'iniquities', 'scandals', 'dirty tricks', and 'outright villainy'." *Id*.  The judge noted racism was not a component of the litigation. *Id*. In this case there was an another factor of the circuit ct having reversed many dist. ct. orders against Interior. *Id*. at 333-34. Additionally, the court inappropriately got involved in evidence-gathering. *Id*. at 335. "What distinguishes this case from one in which a judge has merely become 'exceedingly ill-disposed towards [a party which] has been shown to be thoroughly

reprehensible'...is,...not any redeeming aspect of Interior's behavior as trustee. Rather, what distinguishes this case is the combination of the content of the ...opinion and the nature of the district court's actions." *Id.* at 335. The matter was remanded with instructions to reassign the case." *Id.* at 335-36.  Doe notes the seriousness with which the court takes baseless ethics accusations.

In Doe's case, in addition to the bad character accusation, the district court judge and magistrate were never aware of the reason for the suit-- discrimination within the housing program, which beyond being the very first statement in the complaint was thereafter referred to numerous times in Doe's filings. R. 20, pageID# 105 The court inaccurately indicated Doe had failed to file a request to proceed with anonymity. Id. at pageID# 106. The magistrate in her R&R indicated Doe had made statements "repeatedly" in her anonymity request that she had not made at all. *Id.* Considering this district court knows virtually nothing about Doe's case, there is no waste or duplication if another judge is found who will read it.

The State also asserts:

> "Doe's affidavit merely restates her belief that the District Court's *view of the law*, as expressed in the order denying leave to proceed in forma pauperis, shows bias and prejudice. That is, Doe's affidavit, and essentially her entire position, is based on a disagreement with the District Court's view of the law pertaining to a plaintiff's ability to proceed anonymously in litigation." [emphasis provided]

State Resp. M/Aff. at 4-5

The state here makes two different statements, the first about proceeding in forma pauperis and the second about pursuing litigation anonymously, but links them here as if they are saying the same thing. The first sentence says Doe has a disagreement in *law* about Doe filing in forma pauperis. That is not correct. Doe has a factual disagreement

in terms of her having filed the anonymity appeal in good faith.   The

second sentence here, about her 'entire position' being based on a

disagreement with the district court's view of the law pertaining to

filing anonymously in litigation is also error as expressed here. That's a

different part of this appeal and not comprised within the request for a

new judge.   Cases referenced by Doe specifically in this matter are not

to show the correctness of Doe's position in terms of being able to file

the case anonymously which was denied in the order of May 3, 2019

R. 27 PageID# 122. The point of mentioning the anonymity cases in

this matter is to show that a suggestion that Doe's legal position has

no conceivable basis in fact or law is demonstrably false. And even if

the case which was discussed extensively in Doe's Request for

Anonymity R.12 PageID# 84-86, *Doe v. Sessions*, 2018 WL 4637014

(D.D.C. Sept. 27, 2018), a suit brought for failure of a government

agency to make accommodations for a man's mental disability was the

*only case* this judge was aware of where a court granted anonymity,

that alone provided sufficient basis to demonstrate that the same

determination in this circuit is possible. There was no bona fide legal reasoning of which Doe is aware to support the judge's accusation.

The state indicates that one may not request a new judge based on "Conclusions, rumors, beliefs, and opinions" and "subjective beliefs along are not sufficient to show bias or prejudice.' State Resp. M/Aff. at 3-4. Doe isn't referring to any rumors, or subjective second-hand knowledge.  The district court judge put in writing her assessment of Doe's character and filed it in the court record. The district court judge stated, "an appeal is not taken in good faith if the issue presented is frivolous, defined as lacking an arguable basis either in fact or law." R. 31 PageID# 167. And, the court "finds that the issues on which plaintiff might seek review are frivolous." *Id.* So the court has determined that the Plaintiff has not filed in good faith. at 167-68.

A definition of "good faith" in Michigan can be found in *Fineout v. Kostanko*, No. 17-1910 (6th Cir. 2019) in discussing torts, "Under Michigan law, good faith is defined 'simply as acting without malice.'"

39

*Fineout* at **18** quoting *Odom v. Wayne County*, 760 N.W. 2d 217, 225 (Mich. 2008).

In *Bejing Fito Med. Co. v. Wright Med. Tech., Inc.* Case No. 17-6530 (6th Cir. Feb. 7, 2019), in discussing good faith in a contract matter at **11** the court cites a concurring opinion in *Dick Broad. Co., Inc. of Tenn. v. Oak Ridge FM, Inc.*, 395 S.W.3d 653, 673 (Tenn. 2013) (Koch, J., concurring). (In a contracting matter, narrow definition of good faith is the absence of bad faith. *Id.* at 674. Bad faith is not simply bad judgment or negligence. Id. at 675. Rather, bad faith involves a dishonest purpose and may include fraud and deceit. *Id.*)

In *Godboldo v. Cnty of Wayne*, No. 15-2438 (6th Cir. Apr. 14, 2017), in deciding another case under Michigan law, the definition of a lack of good faith is defined as "'malicious intent, capricious action or corrupt conduct.'" quoting *Odom v. Wayne County*, 760 N.W. 2d 217, 225 (Mich. 2008).

In *Home-owners Ins. Co. v. Allied Prop. & Cas. Ins. Co.* Case No. 1268 (6th Cir. Dec. 16, 2016), a matter involving indemnification under Michigan law, "Good faith means "good intentions and the honest exercise of [one's] best judgment." *Home-owners* at \*8. quoting *People v. Downes, 228 N.W.2d 212, 216-17 (Mich. 1975)* with additional citation, "*Miller v. Riverwood Recreation Ctr., Inc.*, 546 N.W.2d 684, 689 (Mich. Ct. App. 1996) (noting that *Black's Law Dictionary* (6th ed.) 'defines "good faith", in part, as "an honest belief, the absence of malice and the absence of design to defraud or seek unconscionable advantage.')."

Doe believes a reasonable person would not deem a judge who already held such a view of a party when the actual litigation has barely begun would be thereafter capable of neutrality.

The state indicates that Doe's references to decisions of this magistrate and district judge in other cases are "unavailing." State Resp. M/Aff. n.1 at 5. Perhaps Doe did not explain very well why those decisions

are relevant to Doe. They are not relevant in terms of whether or not Doe should be able to file the lower court case anonymously.  They are relevant to Doe having a judge she is able to understand. For someone like Doe with a mood/mental disorder, thought processes are something of a challenge to sort through. It takes a lot of time, lots of reading, and lots of writing to keep things from being confused, but in order to *ever* understand them they need to foundationally make sense. If Doe consistently can't understand the reasoning, the thinking, the decision-making process of this magistrate and judge, demonstrated further in other cases besides Doe's, that has a direct negative impact on Doe's mental state, which manifests negatively in her physical health.

Admittedly, Doe was terse to the point of rudeness in her objection to the magistrate's R&R. R. 26, pageID# 119-121. Not surprisingly, Doe has no friends at all and why she is extremely reliant on her children for help dealing with her functional limitations. Being what Doe considers 'direct' (ADD-type compulsive expression) as well as having

42

roller-coaster emotions (mood disorder) is a bad combination in terms of relating to other people. But being curt still doesn't justify an accusation that Doe is pursuing an appeal in bad faith.

## CONCLUSION

Doe requests her case be remanded to a different judge in the district court with no magistrate and be directed to proceed with the expedite options available under disability discrimination cases as indicated in the Conclusion of Doe Br. 65-66. Doe requests that instructions be given that Doe should be able to supplement her complaint for anything occurring after the initial complaint and the first amendment were filed, and that if a factual matter comes to light, or a legal argument was missed or a relevant matter wasn't clearly presented in the original filing, then Doe should be allowed to amend her complaint. Doe believes it is really too overwhelming to start from scratch. She had really just wanted to clean it all up.  Doe requests an order be given for the housing agency to facilitate her ability to move

43

as she hopes to do in the fall, and that they be instructed not to retaliate by complaining of Doe's matters to the housing agency where Doe transfers. Retaliation for having pursued disability rights is prohibited under 42 U.S.C. §12203.

Further, Doe requests that defendants be required to pay all the costs of this appeal with interest. Some of their arguments against Doe filing anonymously are clearly subterfuge, such as suggesting Doe is not disabled.

Respectfully submitted,

[signature]

Jane Doe, Pro Se
PO Box 230721
Grand Rapids, MI 49523
court.docs.only.0@gmail.com
239.537.5966

THIS DOCUMENT, COMPLIES WITH THE TYPE/VOLUME LIMITS BEING IN FONT ABYSSINICA SIL, 14 PT, 6439 WORDS [EXCLUDING THE COVER, THE TABLE OF CONTENTS, TABLE OF DOCUMENTS, AND TABLE OF AUTHORITIES] PREPARED IN LINUX MINT

CERTIFICATE OF SERVICE

ON 14 APRIL 2020 THIS DOCUMENT IS BEING EMAILED TO:

CA06_Temporary_Pro_Se_Efiling@CA6.uscourts.gov

copied to:

graneye@michigan.gov
Erik Graney
Attorney for Appellee Gary Heidel, MSHDA
P.O. Box 30754
Lansing, MI  48909

& copied to:

jeanne.long@usdoj.gov
Jeanne Long
Assistant U.S. Attorney for Appellees HUD & US
P.O. Box 208
Grand Rapids, MI 49501

# DOCUMENTS USED IN REPLY BRIEF

| DESCRIPTION OF ENTRY | DATE | RECORD NO. | PAGE ID# (S) |
|---|---|---|---|
| **DISTRICT COURT DOCUMENTS** | | | |
| | | | |
| COMPLAINT | 11/02/2018 | R. 1 | 2, 8, 33 |
| COVER SHEET | 11/02/2018 | R. 1-1 | 34, |
| AMENDMENT TO COMPLAINT | 11/26/2018 | R. 7 | 47, 61 |
| REQ TO AMEND+ATTNY | 12/07/2018 | R. 11 | 67, 73 |
| COPY INS LETTER W/MED DIAGNOS | 12/07/2018 | R. 11-1 | 75 |
| REQ FOR ANONYMITY | 12/07/2018 | R.12 | 76, 84-86 |
| STATE RESPONSES | 12/21/2018 | R.18 | 101 |
| MAGISTRATE R&R ANONYMITY | 01/04/2019 | R.20 | 105-106 |
| HUD MOTION TIME EXTENSION | 01/14/2019 | R.23 | 114-115 |
| HUD CERT OF COMPLIANCE | 01/14/2019 | R.24 | 117-118 |
| MAG ORDER HUD TIME EXT | 01/15/2019 | R.25 | 118 |
| DOE OBJECTIONS TO R&R | 01/18/2019 | R.26 | 119-121 |
| OPINION AND ORDER | 05/03/2019 | R. 27 | 122-123 |
| ORD DENYING IN FORMA PAUPERIS | 05/29/2019 | R.31 | 167 |
| CASE DISMISSAL | 05/30/2019 | R.32 | 169 |
| | | | |
| **APPELLATE COURT DOCUMENTS** | | | |
| | | | |
| DOE APPELLATE BRIEF (Doe Br.) | 02/20/2020 | DOC 21 | 14,17,20,56-62,65 |
| DOE MOTION/AFFIDAVIT RE JUDGE (Doe M/Aff.) | 03/03/2020 | DOC 23 | 5-15 |
| STATE RESPONSE RE JUDGE (State Resp. M/Aff.) | 03/12/2020 | DOC 24 | 2-5 |
| STATE RESPONSE BRIEF (State Br.) | 03/20/2020 | DOC 25 | 10,13,25-28,31-34,36 |
| HUD RESPONSE BRIEF (HUD Br.) | 03/23/2020 | DOC 26 | 9-10,14,16,18,22-24 |