RECEIVED

JUN 2 2 2020

DEBORAH S. HUNT, Clerk

**UNITED STATES COURT OF APPEALS**
**FOR THE SIXTH CIRCUIT**
100 East Fifth Street, Room 540
Potter Stewart U.S. Courthouse
Cincinnati, Ohio  45202-3988

|  |  |  |
|---|---|---|
| Jane Doe, | ) | **Case No. 19-1566/19-1714** |
|  | ) |  |
| Plaintiff/Appellant | ) |  |
|  | ) | Originating Case No. |
|  | ) | 1:18-cv-01231 |
| v. | ) |  |
|  | ) |  |
|  | ) |  |
|  | ) |  |
| Ben Carson, as Executive | ) |  |
| Director, U.S. Dep' of Housing | ) |  |
| and Urban Development, et al., | ) |  |
|  | ) |  |
| Defendants/Appellees | ) |  |
|  | ) |  |

**PETITION FOR REHEARING EN BANC**
OF ORDER ISSUED BY THIS COURT DENYING ANONYMITY AND
DISPOSING OF ENTIRE LOWER COURT CASE

**Filed by Appellant, Jane Doe**

Jane Doe, Pro Se
P.O. Box 230721
Grand Rapids, Michigan 49523
239.537.5966

## PETITION FOR REHEARING EN BANC

OF ORDER ISSUED BY THIS COURT DENYING ANONYMITY AND

DISPOSING OF ENTIRE LOWER COURT CASE

### INTRODUCTION

A.　　This is a case of exceptional importance. It concerns a mentally ill individual being able to litigate with anonymity by having their real name redacted from all filings (not sealed--things can be unsealed). It is particularly important in a case like this, where it is an attempt to obtain disability rights from a federal agency. Most mentally ill persons will not be able to bring suit.

B.　　The Panel decision is in conflict with:

*Doe v. Porter*, 370 F.3d 558 (6th cir. 2004)

*Signature Mgmt. Team v. Doe*, 876 F.3d 831 (2017)

1

*Detroit Free Press, Inc. v. U.S. Dept. of Justice*, 829 F.3d 478 (6th Cir. 2016)

*Addington v. Texas*, 441 U.S. 418 (1979)

*Whalen v. Roe*, 429 U.S. 589 (1977)

*Nixon v. Warner Communications, Inc.*, 435 U.S. 589 (1978)

*Tennessee v. Lane*, 541 US 509 (2004)

*US DOJ v. Reporter's Comm.*, 489 US 749 (1989)

*National Aeronautics v. Nelson*, 562 U.S. 134 (2011)

*Parham v. J.R.*, 442 U.S. 584 (1979)

*Food Marketing Institute v. Argus Leader Media,* 139 S. Ct. 2356 (2019)

*Roe v. Wade*, 410 U.S. 113 (1973)

*Olmstead v. United States*, 277 U.S. 438, 473 (1928) (Brandeis dissent)

*Heller v. Doe*, 509 U.S. 312 (1993)

Consideration by the full court is necessary to secure and maintain uniformity of this Court's decisions, consistency with the U.S. Supreme Court, and consistency with federal statutes.

# PROCEDURAL NOTE

This Panel's Order of May 6, 2020 begins, "Jane Doe, a Michigan litigant proceeding pro se, appeals the district court's orders denying her motion to amend her complaint and denying her motion to retain her anonymity." p. 1 On page 2, the Court repeats this statement and adds "Doe moves this court for assignment to a new judge if this case is remanded to the district court." Then on page 5, it states, "Doe does not challenge the district court's subsequent dismissal of her case for failing to file an amended complaint identifying herself." If there's a question about the incomplete cover sheet for the brief, which said neither anonymity nor dismissal, according to the delivery carriers, the corrected one stating appeal from anonymity request and dismissal arrived at the court fifteen minutes prior to the brief itself. Doe requested in June 2019 that some accommodations be given for her functional disabilities.

Before the case in the district court was dismissed on May **30, 2019**, on May **17, 2019** Doe submitted a request for a stay in the case--a request determined to be moot in an order by this Court November **1, 2019**.

The appeal of the case dismissal was June **12, 2019**. This Court issued an order June **25, 2019** that the request to appeal the case dismissal was assigned Case No. **19-1714**.

On January **8, 2020**, this Court issued Orders permitting Doe to file both appeals in forma pauperis. Also on January **8, 2020**, the appeals were combined. The issue of not filing in her actual name was the reason for the case dismissal and the subject matter for the request for anonymity. Doe Doesn't understand why the Court says she didn't appeal the case dismissal.

DISCUSSION OF PANEL OPINION

Doe thinks the fact that the district court demonstrated it had not read Doe's complaint by indicating Doe is seeking to obtain government housing when she is disputing actions in a program she is already in. It is the first line of the complaint, and one cannot read it and not realize the issues are within a program. They also failed to grasp that her main concern was being 'chilled' in seeking redress and mistakenly put forth that she stated "repeatedly" her free speech rights would be chilled--these alone should constitute an abuse of discretion.

A.    The first aspect of faulty reasoning is to think the main premise is comparing bringing suit in one's name to bringing suit with anonymity. The reality is, it's more likely bringing a suit with anonymity, or not bringing suit. This Court reiterates the district court saying people with these disorders bring these suits in their own name. Neither they nor this Court have identified any cases. This district court made the same assertion in another case in 2012 and didn't have

any citations then. *(G.E.G. v. Shinseki*, 2012 WL 381589 *2 (W.D. Mich. Feb. 6, 2012) (See discussion Doe's Motion and Affidavit for New Judge, Doc. 23).   If someone knows their privacy will be protected, they will feel safe going to the courts to enforce their rights. Many cases will not be brought if using one's name is required, which leaves many mentally disabled people unable to enforce their rights under disability law. Others may not bring suit even in their name if they can't see how issues are being decided, if none are litigated.

B.     Doe's case was dismissed on the basis of Rule 10(a). This court conducted an anonymity case without even mentioning Rule 10(a), *Signature Mgmt. Team v. Doe*, 876 F.3d 831 (6th Cir. 2017). The *Signature* case was the correct one. If we break down the words as was done in *Food Marketing Institute v. Argus Leader Media*, 139 S. Ct. 2356 (2019) with the word 'confidential', Doe being anonymous doesn't violate this rule.

'Rule 10. Form of Pleadings" *Form* is defined as, "1. external appearance of a clearly defined area.  Webster's Unabridged Dictionary of the English Language, Copyright 2001. And is defined as, "A model or skeleton of an instrument to be used in a judicial proceeding or legal transaction." Black's Law Dictionary Abridged Sixth Edition, Copyright 1983. "(a) CAPTION; NAMES OF PARTIES. Every pleading must have a caption with the court's name, a title, a file number and a Rule 7(a) designation. The title of the complaint must name all the parties; the title of other pleadings, after naming the first party on each side, may refer generally to other parties."

As in much of the law, some terms are given specific definitions within the law itself as here where 'parties' are identified:

"Rule 17. Plaintiff and Defendant: Capacity; Public Officers

(a) REAL PARTY IN INTEREST.

(1) *Designation in General.* An action must be prosecuted in the name of the real party in interest. The following may sue in their own

names without joining the person for whose benefit the action is brought: (list N/A) (2) (N/A) (3) *Joinder of the Real Party in Interest.* The court may not dismiss an action for failure to prosecute in the name of the real party in interest until, after an objection, a reasonable time has been allowed for the real party in interest to ratify, join, or be substituted into the action. After ratification, joinder, or substitution, the action proceeds as if it had been originally commenced by the real party in interest."

*General:* "of, pertaining to, or true of such persons or things in the main, with possible exceptions; common to most; prevalent; usual." Websters. "principle or central...; obtaining commonly." Black's Law Dictionary. "*Ratification:* In a broad sense, the confirmation of a previous act done either by the party himself or by another; as confirmation of a voidable act." Black's Law Dictionary, and; *ratify:* "to confirm by expressing consent, approval, or formal sanction." Webster's. In (a)(3). The rule says the real party in interest may

8

"ratify, join, or be substituted into the action." It doesn't say their name must appear in the caption.

In her appellate brief, Doe has a section about the Notes of Advisory Committee on Rules -- 1966 Amendment in Rule 17 discussing the use of 'Doe'.  The primary concerns about anonymity are to ensure res judicata, and to prevent the random insertion of unidentified individuals such that attorneys could file after a major disaster and then just round up litigants essentially by-passing the statute of limitations by inserting real people after the case already exists. These issues don't exist when a party's real identity is known.

In *Roe v. Wade,* "Despite the use of the pseudonym, no suggestion is made that Roe is a fictitious person. For purposes of her case, we accept as true, and as established, her existence..." *Roe v. Wade*, 410 U.S. 113, 124 (1973). A case where the litigant could not be identified was *Citizens for a Strong Ohio v. Marsh*, 123 Fed. Appx 630 (6th Cir. 2005). In this case there is a vague description of a litigant who has

"contributed to issue advocacy organizations in the past...John Doe wishes to continue contributing, but refuses to do so, given the OEC's current request to subpoena the donor lists of Citizens and the Ohio Chamber. A ruling by this court that abstention is not appropriate with respect to John Doe would create an incentive to find 'straw men' in future actions that seek to interfere with pending state court proceedings." *Marsh* at 6.

Doe's case is along the lines of *Roe v. Wade* since she must communicate with defendants to resolve the issues in the case. In *Signature Mgmt.*, the court did "compel Doe to reveal his identity to the court and to Team's attorneys." *Signature Mgmt. Team v. Doe*, 876 F.3d 831, 834 (6th Cir. 2017). That puts *Signature Mgmt.* also in the category of *Roe v. Wade*. Whether it's the plaintiff or defendant using 'Doe,' they are equally using a pseudonym in the caption. To express otherwise is to make a distinction without a difference.

C.    This Court reiterates the district Court in saying Doe doesn't meet "the Porter factors." And, "none of the other Porter factors weighed in her request." It would appear that not only is this Court doing an evaluation differently than the other circuits Doe has looked at, but is even turning it's own authority for *Porter, Stegall,* on its head.   This Court quotes the district court in indicating a situation to be protected must be something of the 'utmost intimacy.'   In *Doe v. Stegall,* 653 F.2d 180 (5th Cir. 1981), the court stated that of the three factors from SMU, only one applied, having the government as the defendant. *Stegall* at 185. *Southern Methodist Univ. Ass'n v. Wynne & Jaffe* (SMU), 599 F.2d 707 (5th Cir. 1979) is the case upon which *Stegall* is based.   *Doe v. Porter,* 370 F.3d 558 (6th Cir. 2004) followed *Stegall* and had virtually the same facts. In *Stegall*, religion was considered private, not intimate. *Stegall* at 186. *Porter* at 560.

All circuit courts use similar groups of items to begin their evaluation. Then they consider other factors that would apply to the specific case. "[O]ur singling out of the *James [v. Jacobson*, 6 F.3d 233, 238 (4th

Cir. 1993)] factors should not lead a trial court to engage in a wooden exercise of ticking the five boxes." *In re Sealed Case,* 931 F.3d 92, 97 (D.C. Cir. 2019).

D.    This Court required evaluation of the best interests of the public in sealing/redaction decisions in *Brown & Williamson Tobacco Corp. v. FTC,* 710 F.2d 1165, 1176 (1983); *In re Knoxville News-Sentinal,* 723 F.2d 470,474 (1983) (*Quoting Brown & Williamson,* 710 F.2d 1179 "trial courts have always been afforded the power to seal their records when interests of privacy outweigh the public's right to know"); *In re National Prescription Opiate Litigation,* 927 F.3d 919, 931 (2019); *Rudd Equipment Co. v. John Deere,* 834 F.3d 589, 593-94 (2016); *Shane Gp., Inc. v. Blue Cross Blue Shield of Michigan,* 825 F.3d 299, 305-06 (2016); and *Signature Mgmt. Team v. Doe,* 876 F.3d 831, 837-38 (2017). No inquiry was done concerning the best interests of the public in Doe's case.

This opinion in *Signature Management Team v. Doe*, 876 F.3d 831 (2017) has dramatic discrepancies with Doe's case. "[T]he ability to speak anonymously on the Internet promotes the robust exchange of ideas and allows individuals to express themselves freely without 'fear of economic or official retaliation ...[or] concern about social ostracism. *Signature* at 835-36 (quoting *In re Anonymous Online Speakers*, 661 F.3d 1168, 1173 (9th Cir. 2011)). Later in the opinion, "People who have committed no wrong should be able to participate online without fear that someone who wishes to harass or embarrass them can file a frivolous lawsuit and thereby gain the power of the court's order to discover their identity." *Signature* at 836.  People who have committed no harm, and people who have violated copyrights have more rights than vulnerable people who have already been victimized. "[U]nmasking an anonymous speaker is a significant and irreversible harm." *Signature* at 834. (citing lower court case). Doe would also experience irreversible harm if her problems were posted online.

And, "where the anonymous defendant is determined to have fully complied with the relief granted, there is no practical need to unmask the defendant." *Id.* at **836**. "[T]he burden on the party seeking non-disclosure is diminished where there is minimal public interest in learning the non-disclosed information." *Id.* at **836-37**  Doe didn't see this discussion in her case. There is no 'practical' need to identify Doe and there is no particular public interest in Doe's life.

"The presumption of open records typically implicates information known to the parties but submitted under seal--courts therefore focus on the public's interest in learning the sealed information [in the typical case]." *Id.* at **837**. Not in Doe's case. "Determining the public interest in the disclosure of the identity of a Doe defendant is a fact-intensive inquiry." *Id.* at **837**. "[A] Doe defendant may rebut a presumption of openness by showing that he engages in substantial protected speech that unmasking will chill." *Id.* at **838**.  Doe having to use her real name will chill her ability to seek redress in the courts.

The panel opinion says, "*any* lawsuit against the government would implicate the First Amendment right to petition for a redress of grievances." (emphasis provided) p. 5. In the same way, anyone can still say what they want on the Internet without anonymity. The issue is if a First Amendment right is being "chilled."

E.     Regarding a concern about employers, there is an extensive discussion *Detroit Free Press, Inc. v. U.S. Dept. of Justice*, 829 F.3d 478 (6th Cir. 2016) wherein this Court found that "[i]ndividuals enjoy a non-trivial privacy interest in their booking photos" and exposure of those would be similar in impact to Doe's disabilities. *Detroit Free Press* at 480. This Court cites 5 U.S.C. §552(b)(7)(C) indicating "The Supreme Court has described Exemption 7(C) as reflecting privacy interests in 'avoiding disclosure of personal matters'. *Id.* at 481 (quoting *U.S. Dept. of Justice v. Reporters Comm.*, 489 U.S. 749, 762. (1989). "Exemption 7(C) privacy interest 'must be understood...in light of the consequences that would follow' from unlimited disclosure." *Detroit Free Press* at 482. "Potential employers and other acquaintances may

15

easily access booking photos on these websites, hampering the depicted individual's professional and personal prospects. *Id.* at 483.

"Courts have refused to permit their files to serve...as sources of... information that might harm a litigant's competitive standing." *Nixon v. Warner Communications, Inc.*, 435 U.S. 589, 598 (1978). Doe would like the Court here to likewise endorse this position. She is fairly confident medical advancements will enable her to work again.

The Ninth Circuit, the D.C. Circuit and probably others consider the impact on someone's future prospects.

F.    This Court seemed to indicate only medical files were protected information; however, "The Privacy Rule protects all *'individually identifiable health information'* held or transmitted by a covered entity or its business associate, in any form or media, whether electronic, paper, or oral. The Privacy Rule calls this information *'protected health*

16

*information (PHI)*.'" (Emphasis in original) (See attachment 2 in Doe's brief) 45 CFR §160.103.

DISABILITY

Congress' reason for enacting the Americans with Disabilities Amendments Act (ADAA) is that courts were treating disabled individuals harshly. Found in the notes section of 42 U.S.C. §12101, "Findings and Purpose of Pub.L. 110-325: (a) Findings--Congress finds that--(1) in enacting the Americans with Disabilities Act of 1990 (ADA) [42 U.S.C. §12101 et seq.], Congress intended that the Act provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities and provide broad coverage...(2) "[P]hysical and mental disabilities in no way diminish a person's right to fully participate in all aspects of society, but that people with physical or mental disabilities are frequently precluded from doing so because of prejudice, antiquated attitudes, or the failure to remove societal and institutional barriers; (3) while Congress

expected that the definition of disability under the ADA would be interpreted consistently with how courts had applied the definition of a handicapped individual under the Rehabilitation Act of 1973 [29 U.S.C. §701 et seq.], that expectation has not been fulfilled."

When the U.S. Supreme Court misinterpreted statutes and made it harder for disabled persons to secure their rights, Congress amended the statutes to make their meaning more clear in the Americans with Disabilities Amendments Act of 200 (ADAA), which even states that it was enacted to overrule the court decisions in *Sutton v. United Airlines, Inc.*, 527 U.S. 471 (1999), 119 S. Ct. 2139, 144 L.Ed. 2d 450, and *Toyota Motor Manufacturing, Kentucky, Inc. v. Williams*, 534 U.S. 184 (2002), 122 S.Ct. 681, 151 L.Ed. 2d 615. ADA Amendments Act of 2008, Pub.L. 110-325, §2, Sept. 25, 2008, 122 Stat. 3553. "Title II's requirement of program accessibility, is congruent and proportional to its object of enforcing the right of access to the courts. The unequal treatment of disabled persons in the administration of judicial services has a long history, and has persisted despite several legislative efforts

Case: 19-1566    Document: 29    Filed: 06/22/2020    Page: 19

Case: 19-1566    Document: 29    Filed: 06/22/2020    Page: 20

to remedy the problem of disability discrimination." *Tennessee v. Lane*, 541 U.S. 509, 516 (2004). The case concerns a physical disability, but the ADA applies equally to mental disabilities. The Court indicates that "failure to accommodate persons with disabilities will often have the same practical effect as outright exclusion." *Tennessee v. Lane*, 541 U.S. 509, 531 (2004). (The Social Security Administration has determined Doe is disabled, so that is not at issue.)

MENTAL ILLNESS

"The expanding concern of society with problems of mental disorders is reflected in the fact that in recent years many states have enacted statutes designed to protect the rights of the mentally ill." *Addington v. Texas*, 441 U.S. 418, 426 (1979). "The individual should not be asked to share equally with society the risk of error when the possible injury to the individual is significantly greater that any possible harm to the state." *Addington* at 427. There is no "harm" to the public if Doe is anonymous. "One who is suffering from a debilitating mental

19

illness and in need of treatment is neither wholly at liberty, nor free of stigma. *Addington* at 429.

"When the Fourth and Fifth Amendments were adopted, 'the form that evil had theretofore taken' had been necessarily simple. Force and violence were then the only means known to man by which a government could directly effect self-incrimination...It could secure possession of his papers and other articles incident to his private life...Protection against such invasion of 'the sanctities of a man's home and the privacies of life' was provided in the Fourth and Fifth Amendments by specific language." Dissent Brandeis, *Olmstead v. United States*, 277 U.S. 438, 473 (1928). "But 'time works changes, brings into existence new conditions and purposes.' Subtler and more far-reaching means of invading privacy have become available to the Government...to obtain disclosure in court of what is whispered in the closet." *Id.* "The greatest dangers to liberty lurk in insidious encroachment by men of zeal, well-meaning but without understanding." *Id.* at 479.

Case: 19-1566     Document: 29     Filed: 06/22/2020     Page: 22

"Appellees overlook a significant source of the public reaction to the mentally ill, for what is truly 'stigmatizing' is the symptomology of a mental or emotional illness." *Parham v. J.R.*, 442 U.S. 584, 601 (1979) (citing *Addington v. Texas*, 441 U.S. 418, 429 (1979))."The pattern of untreated, abnormal behavior--even if non-dangerous--arouses at least as much negative reaction as treatment that becomes public knowledge." *Id.*

"[A]dults previously of sound mental health who are diagnosed as mentally ill may have a need for privacy that justifies the state in confining a commitment proceeding [to the smallest group compatible with due process.] *Heller v. Doe*, 509 U.S. 312, 329 (1993).

PRIVACY

Both the common law and literal understandings of privacy encompass the individual's control of information concerning his or her person. *US DOJ v. Reporter's Comm.*, 489 US 749, 763 (1989). The Court has

several definitions of privacy including, "the rightful claim of the individual to determine the extent to which he wishes to share of himself with others." *Reporter's Comm.* at 764 n.16; "the right to control information concerning the details of one's individuality." *Id.* A disclosure of records regarding private citizens, identifiable by name, is not what the framers of the FOIA had in mind. *Reporter's Comm.* at 765. The Privacy Act of 1974 was passed out of concern over 'the impact of computer data banks on individual privacy.' cites to H.R. Rep. No. 93-1416, p. 7 (1974). *Reporter's Comm.* at 766. In *Rose*, [*Dept of Air Force v. Rose*, 425 US 352 (1976)] we emphasized the FOIA's segregability and in camera provisions in order to explain that the case summaries,"*with identifying names redacted",* were generally disclosable." *Reporter's Comm.* at 768.

In *Whalen v. Roe*, 429 U.S. 589 (1977) (use of Roe unremarked), a statute was being contested by physicians and patients reference collecting information from each doctor to disclose for whom they are prescribing Schedule 2 drugs. *Whalen* at 591-596. The New York

scheme shows "proper concern with, and protection of the individual's interest in privacy." *Whalen* at 605. We are not unaware of the threat to privacy implicit in the accumulation of vast amounts of personal information in computerized data banks or other massive government files. *Id.*

*National Aeronautics v. Nelson*, 562 U.S. 134 (2011) is a case where the government is asking prospective employees if they have had treatment and counseling for use for illegal drug use. *Nelson* at 138. The privacy act authorizes the govt to keep records pertaining to an individual only when they are 'relevant & necessary' to an end required to be accomplished by law. *Nelson* at p. 156 citing 552a (e)(1). Both *Whalen* and *Nixon* recognized government 'accumulation ' of 'personal information' for 'public purposes' may pose a threat to privacy. *Nelson* at 155. *See, Whalen* at 605. See *Nixon v. Admin of Gen Servs*, 433 U.S. 425, 457-58, 462 (1977).

23

## PRAYER FOR RELIEF

Doe requests that her brief, reply brief, and Motion/Affidavit for New Judge be considered for approval and the case remanded to the district court.

Doe requests that she be assigned to a new judge, and the district court be ordered that the case be expedited per 42 U.S.C. §2000e-5(f) (4)-(5) (Enforcement provision for ADA is at 42 U.S.C. §12133, which references Remedies and Attorney Fees at 29 U.S.C. §794a, references Remedies in Civil Rights Act, incl. 42 U.S.C. §2000d et seq.; & 42 U.S.C. §2000e-5.)

Doe requests to be reimbursed by defendants for all costs for her appeal including interest. Neither objected to anonymity when initially requested and suddenly they want to contest it.

Respectfully submitted,                    June 19, 2020

Jane Doe, Pro Se

## Certificate of Compliance

3877 Words

# CERTIFICATE OF SERVICE


A COPY OF PETITION FOR REHEARING EN BANC
Case No. 19-1566/19-1714
IS BEING SENT ON JUNE 19, 2020 TO:


The United States Court of Appeals for the Sixth Circuit
via Priority Mail.

And to:


Ms. Jeanne Frances Long, Attorney for HUD & US
Office of the U.S. Attorney
P.O. Box 208
Grand Rapids, MI

&

Erik Graney, Attorney for
Michigan State Housing Development Authority
Michigan Department of the Attorney General
State Operations Division
P.O. Box 30754
525 W. Ottawa Street
Lansing, Michigan  48909

via first class mail

RECEIVED

JUN 2 2 2020

DEBORAH S. HUNT, Clerk

NOT RECOMMENDED FOR PUBLICATION

Nos. 19-1566/1714

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED

May 06, 2020
DEBORAH S. HUNT, Clerk

Case: 19-1566     Document: 29     Filed: 06/22/2020     Page: 28

| | |
|---|---|
| JANE DOE, | ) |
| Plaintiff-Appellant, | ) |
| v. | ) ON APPEAL FROM THE UNITED |
| | ) STATES DISTRICT COURT FOR |
| BEN CARSON, as Executive Director, U.S. | ) THE WESTERN DISTRICT OF |
| Department of Housing and Urban Development, et | ) MICHIGAN |
| al., | ) |
| Defendants-Appellees. | ) |

O R D E R

Before:  SUTTON, McKEAGUE, and NALBANDIAN, Circuit Judges.

Jane Doe, a Michigan litigant proceeding pro se, appeals the district court's orders denying her motion to amend her complaint and denying her motion to retain her anonymity.  This case has been referred to a panel of the court that, upon examination, unanimously agrees that oral argument is not needed.  *See* Fed. R. App. P. 34(a).

Doe filed a complaint against Ben Carson as Executive Director of the United States Department of Housing and Urban Development, Earl Poleski as Executive Director of the Michigan State Housing Development Authority, the United States, and the United States Attorney, claiming disability discrimination in violation of the Rehabilitation Act and the Americans with Disabilities Act with respect to her participation in the housing voucher program. Doe alleged that she is a qualified individual with a disability and that her disability is "brain dysfunction" or "mental illness."

Doe subsequently filed an amendment to her complaint. Doe then filed a motion to further amend her complaint and for appointment of counsel and a motion to retain her anonymity. A magistrate judge denied Doe's motion to amend her complaint and for appointment of counsel. With respect to Doe's motion to retain her anonymity, the magistrate judge recommended that Doe's motion be denied and that the case be dismissed if she failed to amend her complaint to identify herself by her legal name. Over Doe's objection, the district court adopted the magistrate judge's report and recommendation, denied Doe's motion to retain her anonymity, and ordered Doe to file an amended complaint identifying herself within twenty-one days. Doe filed a notice of appeal (No. 19-1566). To the extent that Doe's interlocutory appeal could be construed as an appeal to the district court from the magistrate judge's order denying her motion to amend her complaint and for appointment of counsel, the district court denied her appeal. Because Doe did not file an amended complaint identifying herself within twenty-one days, the district court dismissed her case. Doe filed another notice of appeal (No. 19-1714).

On appeal, Doe challenges the denial of her motion to amend her complaint and the denial of her motion to retain her anonymity. Doe moves this court for assignment to a new judge if this case is remanded to the district court.

The district court denied Doe's motion to further amend her complaint because she failed to submit a proposed amended complaint. Doe argues on appeal that providing a copy of her amended complaint in advance would be "very arduous and expensive" and that "going through the effort only to have it rejected would be very difficult." Federal Rule of Civil Procedure 15(a)(2) provides that the district court "should freely give leave [to amend] when justice so requires." However, "the district court must be able to determine whether 'justice so requires,' and in order to do this, the court must have before it the substance of the proposed amendment." *Roskam Baking Co. v. Lanham Mach. Co.*, 288 F.3d 895, 906 (6th Cir. 2002). Because Doe did not submit her proposed amended complaint, merely asserting in her motion to amend that the defendants had other statutory duties falling outside disability law, the district court did not abuse its discretion in denying her motion. *See id.* at 906–07.

Case: 19-1566    Document: 29    Filed: 06/22/2020    Page: 29

Case: 19-1566     Document: 29     Filed: 06/22/2020     Page: 30

The district court denied Doe's motion to retain her anonymity and subsequently dismissed her case when she failed to file an amended complaint identifying herself. We review the district court's denial of Doe's motion to retain her anonymity for abuse of discretion. *See D.E. v. Doe*, 834 F.3d 723, 728 (6th Cir. 2016).

"As a general matter, a complaint must state the names of all parties." *Doe v. Porter*, 370 F.3d 558, 560 (6th Cir. 2004) (citing Fed. R. Civ. P. 10(a)). "Under certain circumstances, however, the district court may allow a plaintiff to proceed under a pseudonym by granting a protective order." *D.E.*, 834 F.3d at 728. "It is the exceptional case in which a plaintiff may proceed under a fictitious name." *Doe v. Frank*, 951 F.2d 320, 323 (11th Cir. 1992) (per curiam). In determining "whether a plaintiff's privacy interests substantially outweigh the presumption of open judicial proceedings," courts consider:

> (1) whether the plaintiffs seeking anonymity are suing to challenge governmental activity; (2) whether prosecution of the suit will compel the plaintiffs to disclose information "of the utmost intimacy"; (3) whether the litigation compels plaintiffs to disclose an intention to violate the law, thereby risking criminal prosecution; and (4) whether the plaintiffs are children.

*Porter*, 370 F.3d at 560 (citing *Doe v. Stegall*, 653 F.2d 180, 185–86 (5th Cir. 1981)).

In her motion to retain her anonymity, Doe acknowledged that the defendants must know her identity to respond to her complaint, but asked that the district court permanently seal information about her identity and that the defendants be prohibited from "publishing" information about her identity or the nature of her medical issues. Doe asserted: "Revealing medical diagnoses of brain disorders and the effects thereof of any person relevant to their mental health renders an individual subject to fear, paranoia, ridicule and intimidation due to the public's inadequate understanding and false negative assumptions of the true nature of unseen disabilities."

In recommending that Doe's motion be denied, the magistrate judge noted that she "arguably" challenged governmental activity but found that none of the other *Porter* factors weighed in favor of her request. The magistrate judge was unpersuaded that pursuit of her claims would compel Doe to disclose information "of the utmost intimacy." Although the magistrate

judge sympathized with Doe's desire to maintain privacy with respect to her medical impairments and treatment, the magistrate judge stated that she could request submission of her medical records under seal. Doe objected to the magistrate judge's report and recommendation, asserting that "the stigma of mental illness is one of the worst ones in society," that the submission of medical records under seal would not avoid "revealing the fact of mental illness which is the main subject of every section of the complaint," and that she would "never be able to work again if the court insists on putting a permanent record on the internet of this illness in her real name."

The district court adopted the magistrate judge's report and recommendation and denied Doe's motion to retain her anonymity. The district court agreed with the magistrate judge that "concerns about stigma and scrutiny from prospective employers do not involve information 'of the utmost intimacy'; rather, they constitute the type of concerns harbored by other similarly situated litigants who file lawsuits under their real names." The district court pointed out that, even assuming that Doe satisfied the second factor, that factor was not dispositive. According to the district court, Doe failed to demonstrate any error in the magistrate judge's ultimate conclusion that all four *Porter* factors, considered together, did not establish exceptional circumstances to warrant an exception from the general rule under Rule 10(a) that a plaintiff's complaint "must name all the parties."

The district court, having considered the relevant factors in determining that Doe failed to establish exceptional circumstances to overcome the presumption of open judicial proceedings, did not abuse its discretion in denying her motion to retain her anonymity. Doe asserted that Congress, in enacting the Americans with Disabilities Act, recognized the discrimination and prejudice faced by persons with disabilities and that "the stigma of mental illness is one of the worst ones in society." But Doe failed to identify any exceptional circumstances distinguishing her case from other cases brought by plaintiffs claiming disability discrimination who suffer from mental illness. As Doe acknowledged in her motion, "[t]his decision affects Doe and any victim of disability discrimination likewise situated." Nor did Doe identify any specific harm arising from disclosure of her identity. Doe, who alleged in her complaint that she is completely disabled and unable to work, speculated that she would "never be able to work again" if the district court

required her identification. In the case cited by Doe, *Doe v. Sessions*, No. 18-0004, 2018 WL 4637014 (D.D.C. Sept. 27, 2018), the plaintiff alleged that the defendants humiliated and harassed him based on his sensitive mental conditions, which he had kept confidential for twenty-five years, and asserted that public identification would cause him to be traumatized again. *Id.* at *4. Unlike the plaintiff in that case, Doe did not assert any harassment by the defendants or claim any potential exacerbation of her mental illness.

Doe argues on appeal that she has a First Amendment right to petition for the redress of grievances without roadblocks keeping her from exercising that right. Because any lawsuit against the government would implicate the First Amendment right to petition for redress of grievances, Doe's argument fails to show exceptional circumstances warranting the use of a pseudonym. Doe also contends that statutes such as the Freedom of Information Act and the Health Insurance Portability and Accountability Act provide for the protection of private medical information. Although these laws support the nondisclosure of medical records, they do not entitle Doe to litigate under a pseudonym.

The district court did not abuse its discretion in determining that Doe's case did not present exceptional circumstances to excuse her from Rule 10(a)'s requirement that a plaintiff's complaint "must name all the parties." Doe does not challenge the district court's subsequent dismissal of her case for failure to file an amended complaint identifying herself. Regardless, because the district court did not abuse its discretion in denying Doe's motion to retain her anonymity, the district court properly dismissed her case based on her failure to comply with Rule 10(a) by filing an amended complaint identifying herself. *See Doe v. Kamehameha Sch./Bernice Pauahi Bishop Estate*, 596 F.3d 1036, 1046 (9th Cir. 2010) (affirming dismissal of case based on the plaintiffs' failure to disclose their identities).

For these reasons, we **AFFIRM** the district court's orders and **DENY** Doe's motion for assignment to a new judge as moot.

ENTERED BY ORDER OF THE COURT

Deborah S. Hunt, Clerk

Case: 19-1566     Document: 29     Filed: 06/22/2020     Page: 33

RECEIVED

JUN 2 2 2020

DEBORAH S. HUNT, Clerk

WESTLAW   © 2019 Thomson Reuters. No claim to original U.S. Government Works.                                                                                          1

KeyCite Yellow Flag - Negative Treatment
Distinguished by Massachusetts Delivery Ass'n v. Coakley, 1st Cir.(Mass.), January 20, 2012

123 Fed.Appx. 630
This case was not selected for publication in the Federal Reporter.
Not for Publication in West's Federal Reporter.
See Fed. Rule of Appellate Procedure 32.1 generally governing citation of judicial decisions issued on or after Jan. 1, 2007. See also Sixth Circuit Rule 28. (Find CTA6 Rule 28)
United States Court of Appeals,
Sixth Circuit.

CITIZENS FOR A STRONG OHIO; Ohio Chamber of Commerce; John Doe, a resident of the State of Ohio; Alpha Corporation; Omega Corporation, Plaintiffs–Appellants,
v.
Benjamin F. MARSH, et al., in their official capacity as members of the Ohio Election Commission, et al., Defendants–Appellees.

No. 04–3112.
|
Jan. 3, 2005.

**Synopsis**
**Background:** Political action group, chamber of commerce, and various anonymous parties brought declaratory judgment action against members of Ohio Election Commission (OEC), alleging that certain Ohio election laws violated the First Amendment. The United States District Court for the Southern District of Ohio dismissed the case due to a pending state court action. Plaintiffs appealed.

**Holdings:** The Court of Appeals, Cole, Circuit Judge, held that:

[1] federal court's abstention due to pending state court action was proper with regard to political action group, chamber of commerce, and anonymous corporate plaintiffs;

[2] individual party could not proceed anonymously without seeking permission to proceed under a pseudonym; and

[3] plaintiffs' declaratory judgment action did not seek only prospective relief, so as to render the abstention doctrine inapplicable.

Affirmed.

West Headnotes (4)

[1]     **Federal Courts**

Case: 19-1566    Document: 29    Filed: 06/22/2020    Page: 34

Case: 19-1566    Document: 29    Filed: 06/22/2020    Page: 35

⇐ Elections, Voting, and Political Rights

Federal court properly abstained from hearing declaratory judgment action brought against members of Ohio Election Commission (OEC) by political action group and chamber of commerce due to a pending state court action, since those plaintiffs were subject to ongoing hearings before the OEC, oversight of state and local elections was an important state interest, and plaintiffs had an adequate opportunity to raise their First Amendment claims in the OEC proceeding. U.S.C.A. Const.Amend. 1.

19 Cases that cite this headnote

[2]    **Federal Courts**
⇐ Elections, Voting, and Political Rights

Federal court's abstention from hearing declaratory judgment action brought against members of Ohio Election Commission (OEC) due to a pending state court action applied to anonymous corporate plaintiffs that were not parties to the state proceeding, since their rights derived from the rights of the political action group and chamber of commerce that were litigants in the state proceeding.

19 Cases that cite this headnote

[3]    **Federal Civil Procedure**
⇐ Plaintiffs or intervenors

Individual party could not proceed anonymously in federal action without seeking permission to proceed under a pseudonym. Fed.Rules Civ.Proc.Rule 10(a), 28 U.S.C.A.

25 Cases that cite this headnote

[4]    **Federal Courts**
⇐ Elections, Voting, and Political Rights

Federal action seeking declaration that members of Ohio Election Commission (OEC) violated the First Amendment in their application of Ohio election laws was not limited to prospective relief, so as to render abstention due to pending state court action inapplicable, since such a declaration would have the same effect as an injunction enjoining state action. U.S.C.A. Const.Amend. 1.

5 Cases that cite this headnote

*631 On Appeal from the United States District Court for the Southern District of Ohio.

**Attorneys and Law Firms**

William M. Todd, Squire, Sanders & Dempsey, Columbus, OH, for Plaintiffs–Appellants.

Sharon A. Jennings, Asst. Atty. General, Office of the Attorney General, Columbus, OH, for Defendant–Appellee.

Before: RYAN, COLE, and ROGERS, Circuit Judges.

## OPINION

COLE, Circuit Judge.

**1 Plaintiffs–Appellants **Citizens for a Strong Ohio**, the **Ohio Chamber of Commerce**, and various anonymous parties seek a declaratory judgment against Defendants–Appellees members of the **Ohio Election Commission** in their official capacity, arguing that certain **Ohio** elections laws as applied by the **Ohio** courts and the **Ohio Election Commission** violate the First Amendment of the United States Constitution. On a motion to dismiss, the district court dismissed the case under *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971) due to pending state action.

For the following reasons, we AFFIRM the dismissal of this case.

## I. BACKGROUND

**Citizens for a Strong Ohio** ("**Citizens**") is a nonprofit political action committee that sponsors a broad range of political activities, including, but not limited to, television advertising. The **Ohio Chamber of Commerce** ("**Ohio Chamber**") is a nonprofit corporation that pursues a broad range of activities in **Ohio** to "support **Ohio** businesses and the overall economic climate in **Ohio**." The **Ohio Chamber** is a major contributor to **Citizens**. Anonymous parties John Doe, Alpha Corporation, and Omega Corporation are, or wish to be, active in political issue activities, either by funding **Citizens**, or by funding their own television ads.

During the 2000 election cycle, **Citizens** sponsored various television ads that attacked **Ohio** Supreme Court Justice candidates Justice Alice Robie Resnick and then-Justice Timothy Black for connections to various campaign donors. *Common Cause/Ohio v. Ohio Elections Comm'n*, 150 Ohio App.3d 31, 779 N.E.2d 766, 768 (Ohio Ct.App.2002); *Common Cause/Ohio v. United States Chamber of Commerce*, No.2000E–058 (Ohio Election Comm'n Order of May 15, 2003). Such ads were purported by **Citizens** to be "issue ads" as defined in *Buckley v. Valeo*, 424 U.S. 1, 96 S.Ct. 612, 46 L.Ed.2d 659 (1976), because the ads did not contain any words "expressly exhorting particular electoral action," such as "vote for," "vote against," or "elect" a particular candidate.

On November 1, 2000, the Alliance for Democracy ("Alliance") filed a complaint with the **Ohio Elections Commission** ("OEC"), arguing that **Citizens** and other groups had violated **Ohio Revised Code §§ 3517.21** and 3599.03.[1] Subsequently, *632 the OEC dismissed the case for lack of jurisdiction. After affirmance by the Franklin County Common Pleas Court, the **Ohio Court of Appeals**, Tenth District, reversed, finding that the OEC did have jurisdiction. *See Common Cause/Ohio*, 779 N.E.2d at 771–72.

On remand, the OEC held **Citizens**' arguments regarding *Buckley's* limitations under the First Amendment were not applicable to the conduct and television ads before the Commission. The OEC then issued a subpoena to **Citizens** on September 3, 2003, seeking records of the direct donors of **Citizens**, and indirect donors of **Citizens** through the **Ohio Chamber**. **Citizens** refused to comply and Alliance brought enforcement proceedings in the **Ohio** courts. The Franklin County Court of Common Pleas then issued an enforcement order, subjecting **Citizens** to a $25,000 per day fine for failure to comply with the OEC subpoena,

Case: 19-1566    Document: 29    Filed: 06/22/2020    Page: 37

and ordered Citizens and the Ohio Chamber to produce the donor records. Citizens and the Ohio Chamber have so far refused to comply with the subpoena and enforcement order.

**\*\*2** On July 3, 2003, the Plaintiffs–Appellants filed the instant suit in federal district court seeking a judgment declaring that the OEC's application of Ohio election laws violated the First Amendment and *Buckley*. Plaintiffs–Appellants further allege that the OEC's adverse decisions interpreting Ohio election laws are preventing them from engaging in future political activity and are having an adverse effect on fundraising. Defendant–Appellee OEC moved to dismiss under Fed.R.Civ.P. 12(b)(1) & 12(b)(6), arguing that *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), required federal court abstention. The district court granted the motion to dismiss on *Younger* grounds. Plaintiffs–Appellants timely appealed.


# II. ANALYSIS


## A. Jurisdiction
This Court has jurisdiction over a final judgment of a district court under 28 U.S.C. § 1291. Subject matter jurisdiction for this case exists under 42 U.S.C. § 1983 and 28 U.S.C. §§ 2201 & 2202.


## B. Standard of Review
A district court decision to abstain under *Younger* is reviewed *de novo*. *See Chippewa Trading Co. v. Cox*, 365 F.3d 538, 541 (6th Cir.2004); **\*633** *Traughber v. Beauchane*, 760 F.2d 673, 676 (6th Cir.1985) ("Because theories of state and federal law, and expressions of federalism and comity, are so interrelated in the decision to abstain such dispositions are elevated to a level of importance dictating *de novo* appellate review.").

As the district court dismissed this case on a Rule 12(b) motion to dismiss, this Court must presume all factual allegations in the complaint are true, and draw all reasonable inferences in favor of the non-moving party. *See Mayer v. Mylod*, 988 F.2d 635, 638 (6th Cir.1993).


## C. *Younger* Abstention


### 1. Law
Under the now familiar facts of *Younger*, various parties sought to enjoin the Los Angeles County District Attorney from enforcing a California law that prevented the teaching of socialist or communist doctrine. One of the parties had an indictment against him. After a three-judge panel enjoined the District Attorney from enforcing the Act, the Supreme Court reversed, noting that such actions violated public policy:

> The precise reasons for this longstanding public policy against federal court interference with state court proceedings have never been specifically identified but the primary sources of the policy are plain. One is the basic doctrine of equity jurisprudence that courts of equity should not act, and particularly should not act to restrain a criminal prosecution, when the moving party has an adequate remedy at law and will not suffer irreparable injury if denied equitable relief.... This underlying reason for restraining courts of equity from interfering with criminal prosecutions is reinforced by an even more vital consideration, the notion of 'comity,' that is, a proper respect for state functions, a recognition of the fact that the entire country is made up of a Union of separate state governments, and a continuance of the belief that the National Government will fare best if the States and their institutions are left free to perform their separate functions in their separate ways. This, perhaps for lack of a better and clearer way to describe it, is referred to by many as 'Our Federalism,' and one familiar with the profound debates that ushered our Federal Constitution into existence is bound to respect those who remain loyal to the ideals and dreams

of 'Our Federalism.'

**\*\*3** _Younger,_ 401 U.S. at 43–44.

_Younger_ has been extended to certain state court civil actions. _See Huffman v. Pursue, Ltd.,_ 420 U.S. 592, 603–05, 95 S.Ct. 1200, 43 L.Ed.2d 482 (1975) (applying _Younger_ abstention to state court civil nuisance action against an adult theater). The Supreme Court has also applied _Younger_ to state court administrative proceedings. _**Ohio Civil Rights Comm'n v. Dayton Christian Schs., Inc.,**_ 477 U.S. 619, 620, 627–28, 106 S.Ct. 2718, 91 L.Ed.2d 512 (1986) (holding _Younger_ applies to a sex discrimination claim in religious schools before the **Ohio** Civil Rights Commission); _Middlesex County Ethics Comm. v. Garden State Bar Ass'n,_ 457 U.S. 423, 432–34, 102 S.Ct. 2515, 73 L.Ed.2d 116 (1982) (holding _Younger_ applies to New Jersey bar ethics proceedings against a lawyer for criticizing a state court judge).

More specifically, several federal district courts, including two in this circuit, have applied _Younger_ abstention to hearings before various state or local elections board or commissions. _Chamber of Commerce of the United States v. Ohio Elections Comm'n,_ 135 F.Supp.2d 857 (S.D.Ohio 2001); _Walter v. Cincione,_ No. C–2–00–1070, 2000 WL 1505945 (S.D.Ohio Oct.6, 2000); _see also_ *634 _Scolaro v. District of Columbia Bd. of Elections & Ethics,_ 104 F.Supp.2d 18, 23–24 (D.D.C.2000) (holding _Younger_ abstention applicable in local election board hearing regarding voter intimidation claims against losing candidate); _Wisc. Mfrs. & Commerce v. Wisc. Elections Bd.,_ 978 F.Supp. 1200, 1211 (W.D.Wis.1997) (holding _Younger_ abstention applicable in state board of elections proceeding against a chamber of commerce for various political issue advertisements sponsored by corporations).

Under _Younger_ and progeny, a federal court must abstain under the following three-part test. First, this Court must determine whether there are "ongoing state judicial proceedings." _Fieger v. Thomas,_ 74 F.3d 740, 744 (6th Cir.1996). Second, a court "must find that the state has an important interest in regulating the subject matter of the claim." _Id._ at 745. Third, there must be "an adequate opportunity in the state proceedings to raise constitutional challenges." _Id._

### _2. Citizens and the Ohio Chamber_

[11] Applying these principles to the instant case, **Citizens** and the **Ohio Chamber** do not dispute that they are subject to ongoing hearings before the **OEC**. Indeed, both **Citizens** and the **Ohio Chamber** are subject to a subpoena from the OEC and a related enforcement proceeding in state court. Nor is it disputed that the OEC hearings are judicial in nature. _See Middlesex County Ethics Comm'n,_ 457 U.S. at 433 (noting that state administrative proceedings must be "judicial in nature" for the purposes of _Younger_ abstention). OEC hearings are initiated by a complaint, parties may present and cross-examine evidence, and a decision or opinion is issued, often with an explanation. Furthermore, unsuccessful parties may appeal the OEC's decision in the Franklin County Court of Common Pleas, and if unsuccessful there, may seek further review in **Ohio** appellate courts. _See_ **Ohio** Rev.Code § 119.12.

**\*\*4** Regarding the second prong, **Ohio** and the OEC's oversight of state and local elections is clearly an important state interest.

Regarding the third prong, litigants before the OEC have an adequate opportunity to raise constitutional claims. **Citizens** and the **Ohio Chamber** do not contend that the OEC has neither the power or expertise necessary to review First Amendment or other federal constitutional arguments. Indeed, the OEC has previously addressed and rejected constitutional claims identical to the arguments raised here, in related litigation. _See Common Cause/Ohio v. United States Chamber of Commerce,_ No.2000E–058 (Ohio Election Comm'n Order of May 15, 2003).

Accordingly, the district court properly dismissed **Citizens** and the **Ohio Chamber**.

### _3. Anonymous Plaintiffs–Appellants_

[12] In response, Plaintiffs–Appellants claim that _Younger_ is inapplicable because anonymous corporate and individual appellants are not parties to the OEC proceedings. Plaintiffs–Appellants argue that _Younger_ abstention does not apply to parties who are not subject to pending state court proceedings. _See Gottfried v. Med. Planning Servs.,_ 142 F.3d 326, 329 (6th Cir.1998) (holding that where a litigant is not a subject to a pending prosecution or civil enforcement action, _Younger_ abstention does not apply). Plaintiffs–Appellants note that such a rule extends even where litigants have a "common set of issues and concerns." As support, Plaintiffs–Appellants cite _Doran v. Salem Inn, Inc.,_ 422 U.S. 922, 928–29, 95 S.Ct. 2561, 45 L.Ed.2d 648 (1975), which states:

While there plainly may be some circumstances in which legally distinct parties are so closely related that they should all be subject to *Younger* considerations which govern any one of them, *635 this is not such a case;—while respondents are represented by common counsel, and have similar business activities and problems, they are apparently unrelated in terms of ownership, control, and management. We thus think that each of these respondents should be placed in the position required by our cases as if that respondent stood alone.

Since the anonymous parties are legally unrelated entities, without shared ownership or control, Plaintiffs–Appellants argue that *Younger* abstention is inappropriate.

By contrast, the OEC argues that *Younger* abstention applies to non-parties to a state court proceeding where the interests are inextricably intertwined with those of litigants who are parties in state court. As support, the OEC cites to *Hicks v. Miranda,* 422 U.S. 332, 95 S.Ct. 2281, 45 L.Ed.2d 223 (1975). *Hicks* involved a showing of the adult movie "Deep Throat." *Id.* at 334. In state court, employees of the theater showing the film were charged with violating state obscenity laws. *Id.* at 335. The owner of the theater then brought a federal suit seeking relief. The Supreme Court held that "[the owner and holding company's] interests and those of their employees were intertwined" to the extent that the district court should have abstained under *Younger*. *Id.* at 348. The Court also considered it an important factor that "the federal action sought to interfere with the pending state prosecution." *Id.* at 349.

**5 *Doran* and *Hicks* were synthesized into a broader principle in *Spargo v. N.Y. State Comm'n on Judicial Conduct,* 351 F.3d 65 (2d Cir.2003). In that case, a judicial candidate was subject to a state disciplinary hearing for violations of judicial ethics rules during his campaign. *Id.* at 68–69. Two political supporters brought suit in federal court seeking to declare those rules unconstitutional, effectively preventing the state disciplinary hearing. *Id.* at 70. The Second Circuit held that *Younger* required federal abstention. The *Spargo* Court noted that while *Doran* and *Hicks* "arguably focus on the fact of joint ownership and control, neither decision limits the applicability of *Younger* to cases where the parties are financially related or linked by mutual management." *Id.* at 82. Rather, *Younger* abstention may also be appropriate for non-parties to the state action when "[s]uccess on the merits ... is entirely derivative" of the rights of the state action parties. *Id.* at 83 (internal quotes and citation omitted). Furthermore, non-parties to the state action must "seek to directly interfere with the pending disciplinary proceeding." *Id.* at 85. Since the speech rights of the political supporters of the judicial candidate were completely derivative of the judicial candidate himself, and the political supporters sought to interfere with the state disciplinary proceedings, the Second Circuit held *Younger* abstention applicable. *Id.*

The application of *Younger* abstention to anonymous, legally distinct entities seeking to contribute to a political action committee is not unknown in the federal courts. Indeed, at least one district court dealt with an essentially identical case in *Wisconsin Manufacturers & Commerce v. Wisconsin Elections Board,* 978 F.Supp. 1200 (W.D.Wis.1997). There, the Wisconsin Board of Elections prohibited various organizations from sponsoring attack ads against certain legislators. *See id.* at 1203. A chamber of commerce, an affiliated political action committee, and two anonymous corporations sought a declaratory judgment that the state board of elections had violated the First Amendment and *Buckley*. The district court dismissed the case under *Younger*. In so holding, the district court noted that the two anonymous corporations, ABC Corp. and XYZ Corp., were donors of the lead plaintiff—a trade organization. *See id.* Though the anonymous *636 corporations were not parties to the hearing before the Wisconsin Elections Board, the district court held that their interests were inextricably intertwined with a trade organization which was before the Board, and *Younger* therefore applied. *See id.* at 1211.

In their complaint in the instant case, Plaintiffs–Appellants alleged that "[d]uring 2000, Alpha Corporation chose to contribute to [Citizens] in order to support its issue advocacy efforts. Alpha Corporation and Omega Corporation desire to support [Citizens], and other issue advocacy efforts, in the future." Therefore, the rights of Alpha Corporation and Omega Corporation, vis-a-vis this lawsuit, are merely derivative of the rights of **Citizens** and the **Ohio Chamber** to engage in the political activity complained of in the state action. Furthermore, Alpha Corporation and Omega Corporation are clearly seeking to interfere with the pending state action. Although Plaintiffs–Appellants did not seek an injunction against the enforcement of the subpoena against **Citizens** and **Ohio Chamber**, the effect of the declaration would be to prevent the enforcement of that subpoena and interfere directly with the pending state proceedings.

**6 Accordingly, the district court properly dismissed Alpha Corporation and Omega Corporation.

The anonymous individual party, John Doe, presents a more difficult case. Here, allegations in the Complaint simply state that John Doe has contributed to issue advocacy organizations in the past which publish political advertisements that do not expressly advocate the election or defeat of a candidate. John Doe further wishes to continue contributing to such independent issue advocacy organizations, but refuses to do so, given the OEC's current request to subpoena the donor lists of **Citizens** and the **Ohio Chamber**.

A ruling by this court that abstention is not appropriate with respect to John Doe would create an incentive to find "straw men" in future actions that seek to interfere with pending state court proceedings. Simply by alleging very few facts about who John Doe is and what kind of relationship he has to **Citizens** and **Ohio Chamber**, the plaintiffs could ensure that at least one claim

will go forward in federal court. We should be careful not to create such an easy way to circumvent *Younger*.

[3] John Doe has not alleged sufficient facts to be permitted to proceed with his claim. It is a general rule that a complaint *must* state the names of the parties. Fed.R.Civ.P. 10(a). Plaintiffs are permitted to proceed under pseudonyms only under certain circumstances that justify an exception to this rule. *Doe v. Porter*, 370 F.3d 558, 560 (6th Cir.2004). When determining whether such an exception is justified, a court may consider, among others, the following factors:

> (1) whether the plaintiffs seeking anonymity are suing to challenge governmental activity; (2) whether prosecution of the suit will compel the plaintiffs to disclose information of the utmost intimacy; (3) whether the litigation compels plaintiffs to disclose an intention to violate the law, thereby risking criminal prosecution; and (4) whether the plaintiffs are children.

*Id.* at 560 (internal quotes omitted). It is also relevant to consider whether the defendants are being forced to proceed with insufficient information to present their arguments against the plaintiff's case. *See id.* at 561.

Ordinarily, a plaintiff wishing to proceed anonymously files a protective order that allows him or her to proceed under a pseudonym. *See id.* at 560. In this case, however, the docket sheet does not reflect any motion or proceeding dealing with *637 whether the three anonymous plaintiffs could proceed under pseudonyms. Failure to seek permission to proceed under a pseudonym is fatal to an anonymous plaintiff's case, because, as the Tenth Circuit has held, "the federal courts lack jurisdiction over the unnamed parties, as a case has not been commenced with respect to them." *Nat'l Commodity & Barter Ass'n, Nat'l Commodity Exch. v. Gibbs*, 886 F.2d 1240, 1245 (10th Cir.1989).

Accordingly, the district court did not err in dismissing John Doe.

*4. Prospective Relief*

**7** [4] Plaintiffs–Appellants also argue that *Younger* is not applicable, as they only seek prospective relief. *See Wooley v. Maynard*, 430 U.S. 705, 710–12, 97 S.Ct. 1428, 51 L.Ed.2d 752 (1977) (noting that since only prospective relief was sought from criminal prosecutions of defacing New Hampshire state motto on license plate, and all such criminal prosecutions were completed and not appealed, *Younger* abstention was not applicable). Plaintiffs–Appellants assert that they do not seek an injunction preventing the ongoing OEC action. Rather, Plaintiffs–Appellants claim that since the OEC has issued its decision, they only simply seek relief from prospective, future activity.

This argument is without merit. It is well-settled that a declaration as to rights during the pendency of state action has the same effect as an injunction enjoining state action. *See Younger*, 401 U.S. at 41 n. 2 (noting "declaratory relief is also improper when a prosecution involving the challenged statute is pending in state court at the time the federal suit is initiated"); *Samuels v. Mackell*, 401 U.S. 66, 73, 91 S.Ct. 764, 27 L.Ed.2d 688 (1971) (noting that the "practical effect of the two forms of relief [injunction or declaration] will be virtually identical").

Here, a declaration that the OEC violated the First Amendment in its application of Ohio election laws will, of course, result in prospective relief for the Plaintiffs–Appellants. However, such a declaration will also result in interference with the current OEC action against **Citizens** and the **Ohio** Chamber. Such interference is clearly inappropriate under *Younger* and progeny.

### III. CONCLUSION

For the foregoing reasons we AFFIRM the district court's dismissal of this case.

**All Citations**

123 Fed.Appx. 630, 2005 WL 14986, 2005 Fed.App. 0004N

WESTLAW    © 2019 Thomson Reuters. No claim to original U.S. Government Works.    1

## Footnotes

1  The relevant texts of the Ohio election statutes enforced by the OEC in the underlying case are as follows:

  (B) No person, during the course of any campaign for nomination or election to public office or office of a political party, by means of campaign materials, including sample ballots, an advertisement on radio or television or in a newspaper or periodical, a public speech, press release, or otherwise, shall knowingly and with intent to affect the outcome of such campaign do any of the following:

  (9) Make a false statement concerning the voting record of a candidate or public official;

  (10) Post, publish, circulate, distribute, or otherwise disseminate a false statement concerning a candidate, either knowing the same to be false or with reckless disregard of whether it was false or not, if the statement is designed to promote the election, nomination, or defeat of the candidate.

  Ohio Rev.Code § 3517.21.

  (A) Except to carry on activities specified in sections 3517.082 and 3599.031 of the Revised Code and except as provided in divisions (D), (E), and (F) of this section, no corporation, no nonprofit corporation, and no labor organization, directly or indirectly, shall pay or use, or offer, advise, consent, or agree to pay or use, the corporation's money or property, or the labor organization's money, including dues, initiation fees, or other assessments paid by members, or property, for or in aid of or opposition to a political party, a candidate for election or nomination to public office, a political action committee, a legislative campaign fund, or any organization that supports or opposes any such candidate, or for any partisan political purpose, shall violate any law requiring the filing of an affidavit or statement respecting such use of those funds, or shall pay or use the corporation's or labor organization's money for the expenses of a social fund-raising event for its political action committee if an employee's or labor organization member's right to attend such an event is predicated on the employee's or member's contribution to the corporation's or labor organization's political action committee.

  Whoever violates division (A) of this section shall be fined not less than five hundred nor more than five thousand dollars.

  Ohio Rev.Code § 3599.03.

---

---

---

**End of Document**  © 2019 Thomson Reuters. No claim to original U.S. Government Works.

RECEIVED

JUN 22 2020

G.E.G. v. Shinseki, Not Reported in F.Supp.2d (2012)

DEBORAH S. HUNT, Clerk

WESTLAW   © 2019 Thomson Reuters. No claim to original U.S. Government Works.          1

2012 WL 381589
Only the Westlaw citation is currently available.
United States District Court,
W.D. Michigan,
Southern Division.

**G.E.G.**, Plaintiff,
v.
Eric K. **SHINSEKI**, Defendant.

No. 1:10–cv–1124.
|
Feb. 6, 2012.

**Attorneys and Law Firms**

Nicholas Roumel, Nacht, Roumel, Salvatore, Blanchard & Walker, P.C., Ann Arbor, MI, for Plaintiff.

Ryan D. Cobb, U.S. Attorney, Grand Rapids, MI, for Defendant.

*OPINION*

JANET T. NEFF, District Judge.

**\*1** Plaintiff filed this disability discrimination case pseudonymously under his initials **G.E.G.** on November 15, 2010, alleging that the Department of Veterans Affairs (VA) failed to accommodate his multiple disabilities and subsequently wrongfully terminated his employment at the VA facility in Battle Creek. Plaintiff's Complaint states that he resides in Lexington, Kentucky and seeks to proceed under a pseudonym because of the private nature of his disabilities (Compl., Dkt 1, ¶ 1).

Defendant has filed a motion to dismiss this case with prejudice on the grounds that Plaintiff's pseudonymous suit is improper because Plaintiff failed to file a motion for permission from the Court to proceed anonymously, and his case should be dismissed for lack of jurisdiction and is now time-barred (Dkts 16, 17). Plaintiff has filed a Response (Dkt 18). For the reasons that follow, the Court denies the motion to dismiss this case and also denies Plaintiff's request to proceed under a pseudonym. Plaintiff shall amend his Complaint and proceed under his full name. Because the amendment relates back to the date of filing of the original complaint, Plaintiff's amended action is not time-barred.

I. Background

Plaintiff's single-count Complaint alleges disability discrimination under Section 504 of the Rehabilitation Act of 1973.

Case: 19-1566   Document: 29   Filed: 06/22/2020   Page: 42

According to the Complaint, Plaintiff was hired by Defendant in July 2008 as a Utilization Review Staff Nurse and was placed on a normal two-year probationary status (Compl.¶ 12). Plaintiff's employment was terminated effective April 1, 2009 (*id.* ¶ 26). Plaintiff alleges that he is disabled due to "Attention Deficit Disorder/unspecified learning disorder; sleep apnea; radiculopathy; anxiety disorder; dysthymic disorder; and cervical neck pain" (*id.* ¶ 11). He contends that Defendant discriminated against him by failing to grant reasonable accommodations for his disabilities, and instead concluding that he had abused his sick leave, was absent without leave, and walked off the job, and therefore terminating his employment (*id.* ¶¶ 25–26, 32–33, 36–37). Plaintiff previously filed an Equal Employment Opportunity complaint with the VA alleging disability and gender discrimination; his claim was denied in a Final Agency Decision on January 28, 2010 (*id.* ¶¶ 6–9). His administrative appeal was denied, and he filed this action under the 90–day "Right to Sue" provision (*id.* at 9). The 90–day period expired on November 15, 2010, the day Plaintiff filed his Complaint (Def. Br. at 10).

## II. Analysis

Defendant argues that Plaintiff's case must be dismissed because Plaintiff failed to seek permission from the Court to file a pseudonymous complaint, his alleged disabilities do not warrant such nondisclosure, and consequently, Plaintiff failed to commence an action, and the Court lacks jurisdiction over his Complaint. Defendant further argues that the dismissal should be with prejudice because any new action is now time-barred.

### A. *Plaintiff's Request to Proceed Pseudonymously*

**\*2** The Sixth Circuit Court of Appeals has recognized pseudonymous suits as a limited exception to the general rule that the parties' names must be stated in the complaint:

> It is a general rule that a complaint *must* state the names of the parties. FED. R. CIV. P. 10(a). Plaintiffs are permitted to proceed under pseudonyms only under certain circumstances that justify an exception to this rule. *Doe v. Porter*, 370 F.3d 558, 560 (6th Cir.2004). When determining whether such an exception is justified, a court may consider, among others, the following factors:

>> "(1) whether the plaintiffs seeking anonymity are suing to challenge governmental activity; (2) whether prosecution of the suit will compel the plaintiffs to disclose information of the utmost intimacy; (3) whether the litigation compels plaintiffs to disclose an intention to violate the law, thereby risking criminal prosecution; and (4) whether the plaintiffs are children."

> *Id.* at 560 (internal quotes omitted). It is also relevant to consider whether the defendants are being forced to proceed with insufficient information to present their arguments against the plaintiff's case. *See id.* at 561.

*Citizens for a Strong Ohio v. Marsh*, 123 F. App'x 630, 636–37 (6th Cir. Jan.3, 2005) (unpublished opinion) (emphasis in original).

Defendant asserts that only factors (1) and (2) above even arguably apply in this case, and they do not weigh in favor of allowing Plaintiff to proceed under a pseudonym. The Court agrees. Plaintiff provides no persuasive justification under factor (1), a challenge to governmental activity, which Defendant notes, usually applies to cases in which the plaintiff challenges governmental activity such as a policy or statute. With regard to factor (2), Plaintiff's alleged disabilities are not so intimate or stigmatizing that they justify proceeding pseudonymously. Disability discrimination cases involving disabilities such as those alleged by Plaintiff are routinely filed by named plaintiffs.

Courts have permitted plaintiffs to proceed anonymously[1] " '[w]here the issues involved are matters of a sensitive and highly personal nature,' such as birth control, abortion, homosexuality or the welfare rights of illegitimate children or abandoned families," in cases in which the plaintiffs "were challenging the constitutional, statutory or regulatory validity of government activity." *S. Methodist Univ. Ass'n of Women Law Students v. Wynne & Jaffe*, 599 F.2d 707, 712–13 (5th Cir.1979) (footnotes and citation omitted). Many of the plaintiffs "also had to admit that they either had violated state laws or government regulations or wished to engage in prohibited conduct. *Id.* at 713. No comparable circumstances exist here. Plaintiff's privacy interests do not "substantially outweigh the presumption of open judicial proceedings." *See Porter*, 370 F.3d at 560. Plaintiff

must therefore proceed with this action, if at all, in his full name rather than merely his initials.

### B. *Propriety of Amended Complaint*

**\*3** Having determined that Plaintiff must amend his Complaint and proceed under his full name, the remaining question is whether the amendment relates back to his original complaint. Defendant contends that the failure to seek and obtain permission to proceed pseudonymously is fatal to Plaintiff's action because the Court lacked jurisdiction over an unnamed party; therefore no action was commenced, and Plaintiff's action is now time-barred.

Plaintiff asserts that no controlling authority compels dismissal. He argues that his suit should not be dismissed given the short 90–day filing period, and that pursuant to FED. R. CIV. P. 17(a),² he should be permitted a reasonable time to address Defendant's objection and proceed in his real name, if necessary. Plaintiff contends that the amended complaint would "relate back" to the initial complaint and not deprive the Court of jurisdiction.

Defendant cites the Sixth Circuit's unpublished decision in *Marsh* in support of dismissal:

> Ordinarily, a plaintiff wishing to proceed anonymously files a protective order that allows him or her to proceed under a pseudonym. *See [Porter,* 370 F.3d] at 560. In this case, however, the docket sheet does not reflect any motion or proceeding dealing with whether the three anonymous plaintiffs could proceed under pseudonyms. Failure to seek permission to proceed under a pseudonym is fatal to an anonymous plaintiff's case, because, as the Tenth Circuit has held, "the federal courts lack jurisdiction over the unnamed parties, as a case has not been commenced with respect to them." *Nat'l Commodity & Barter Ass'n, Nat'l Commodity Exch. v. Gibbs,* 886 F.2d 1240, 1245 (10th Cir.1989).

*Marsh,* 123 Fed. App'x at 636–37.

While courts in some cases have found that if a complaint fails to divulge the plaintiff's identity, its filing is ineffective to commence an action, the circumstances presented here do not warrant that conclusion. Here, Defendant is fully aware of Plaintiff's identity and the underlying facts of this case, which are set forth in the Complaint, including the specific factual allegations supporting Plaintiff's discrimination claim, as well as the case numbers and details of the EEO complaint. Although Plaintiff did not file a motion to proceed pseudonymously, he did recognize the need for, and requested, the Court's permission to so proceed in the first paragraph of his Complaint, which stated: "Plaintiff G.E.G. resides in Lexington, Kentucky and seeks to proceed under a pseudonym due to the private nature of his disabilities."

"As a general matter, a complaint must state the names of all parties. FED. R. CIV. P. 10(a). However, we may excuse plaintiffs from identifying themselves in certain circumstances." *Porter,* 370 F.3d at 560. Plaintiff validly points out that if a court can fully consider a case in which the plaintiff proceeds under a pseudonym, it raises a question whether a person's name is truly required to confer jurisdiction (Pl. Br., Dkt 18, at 9).

**\*4** Nonetheless, in *Marsh,* the court reiterated the Tenth Circuit's observation that the failure to seek permission to proceed under a pseudonym is fatal to an anonymous plaintiff's case because " 'the federal courts lack jurisdiction over the unnamed parties, as a case has not been commenced with respect to them.' " *Marsh,* 123 F. App'x at 637 (citing *Nat'l Commodity,* 886 F.2d at 1245). In *Nat'l Commodity,* 886 F.2d at 1245, the Tenth Circuit found dismissal proper because the unnamed plaintiffs had made no request to the district court for permission to proceed anonymously:

> In this case, the unnamed plaintiffs have made no request to the district court for permission to proceed anonymously, nor have they otherwise disclosed their identities to the court or to the defendants. Absent permission by the district court to proceed anonymously, and under such other conditions as the court may impose (such as requiring disclosure of their true identity under seal), the federal courts lack jurisdiction over the unnamed parties, as a case has not been commenced with respect to them.

Here, unlike in *Nat'l Commodity,* Plaintiff did seek permission to proceed under a pseudonym. Accordingly, the court finds the reasoning in *Nat'l Commodity* distinguishable and dismissal of this action unwarranted.

Defendant cites *Does v. Shalushi,* No. 10–11837, 2010 WL 3037789 (E.D.Mich. July 30, 2010), for the proposition that dismissal is required for lack of jurisdiction. In *Shalushi,* the defendants moved for a more definite statement as to the unnamed plaintiffs' identities, and the court granted the motion, further ordering that the plaintiffs must file an amended complaint that identifies each plaintiff by name. *Id.* at * 1, 4–5. The cases cited by Defendant do not speak directly to the issues arising here,

Case: 19-1566     Document: 29     Filed: 06/22/2020     Page: 44

where a request to proceed pseudonymously was made contemporaneously with the filing of the Complaint but subsequently denied. Under the circumstances of this case, Plaintiff's request to amend his Complaint is properly granted.

An Order consistent with this Opinion will be entered.

**All Citations**

Not Reported in F.Supp.2d, 2012 WL 381589

WESTLAW © 2019 Thomson Reuters. No claim to original U.S. Government Works. 1

**Footnotes**

1    Plaintiff stresses that he seeks to proceed "pseudonymously," not "anonymously," since Defendant knows Plaintiff's identity and therefore "is in no way inhibited from defending this action" (Pl. Br. at 3). Nonetheless, the Court must weigh the public's interest in disclosure, and the mere lack of prejudice to Defendant does not outweigh the countervailing considerations.

2    Rule 17(a)(3) provides: "The court may not dismiss an action for failure to prosecute in the name of the real party in interest until, after an objection, a reasonable time has been allowed for the real party in interest to ratify, join, or be substituted into the action. After ratification, joinder, or substitution, the action proceeds as if it had been originally commenced by the real party in interest."

WESTLAW © 2019 Thomson Reuters. No claim to original U.S. Government Works. 1

WESTLAW © 2019 Thomson Reuters. No claim to original U.S. Government Works. 1

**End of Document** © 2019 Thomson Reuters. No claim to original U.S. Government Works.

WESTLAW © 2019 Thomson Reuters. No claim to original U.S. Government Works. 1

UNITED STATES POSTAL SERVICE®

TRACKED* ★★★ INSURED* ★

BH

PRIORITY® MAIL

FLAT RATE ENVEL
ONE RATE ★ ANY WEIGHT

PS00001000014

EP14F Oct 2018
OD: 12 1/2 x 9 1/2

VISIT US AT USPS.C
ORDER FREE SUPPLIES O

* Domestic only. * For Domestic shipments, the maximum weight is 70 lbs. For international shipments, the maximum weight is 4 lbs.

UNITED STATES POSTAL SERVICE Retail

P

US POSTAGE PAID
$7.75
Origin: 49506
06/19/20
2539510200-12

PRIORITY MAIL 2-DAY ®

0 Lb 8.80 Oz
1004

EXPECTED DELIVERY DAY: 06/22/20

C023

SHIP TO:
100 E 5TH ST
RM 540
CINCINNATI OH 45202-3945

USPS TRACKING® NUMBER

9505 5111 4759 0171 5929 22

To schedule free Package Pickup, scan the QR code.

USPS.COM/PICKUP

S00001000014

EP14F Oct 2018
OD: 12 1/2 x 9 1/2

FROM:
John Doe
PO Box 230 [illegible]
GR MI 49523

RECEIVED
JUN 22 2020
DEBORAH S. HUNT, Clerk

TO:
US Ct. of Appeals for the
Sixth Circuit
100 E. 5th St., Rm 540
Potter Stewart US Courthse
Cincinnati, OH
45202-3988

This packaging is the property of the U.S. Postal Service® and is provided solely for use in sending Priority Mail® shipments.